EDMUNSON v. PULLMAN PALACE–CAR CO.

(Circuit Court of Appeals, Fifth Circuit. March 14, 1899.)

No. 782.

SLEEPING-CAR COMPANIES—DUTY TO PASSENGERS—NEGLIGENCE.

A ventilating window at the top of a sleeping car was left open at night, in midsummer, and rain drove in upon the occupant of an upper berth, in consequence of which, as he claimed, he contracted a cold, and was made ill. It appeared that such windows were usually left open at that season, but were always opened or closed as requested by the person occupying the upper berth, and could be opened or closed by such person. The occupant in the case in question was an experienced traveler. He made no request that the window be closed, and there was nothing to give notice to the servants of the sleeping-car company that he required special care or attention. *Held*, that such facts did not establish negligence on the part of the company which rendered it liable for his illness, conceding it to have been due to the cause claimed by him.[1]

In Error to the Circuit Court of the United States for the Western District of Texas.

James N. Edmunson filed his suit in the district court of El Paso county, Tex., against the Pullman Palace-Car Company, claiming damages in the sum of $15,000. The suit was removed by the defendant company to the United States circuit court for the Western district of Texas. Edmunson alleged that on the evening of July 3, 1896, he became a passenger on the Chicago, Rock Island & Pacific Railroad from Colorado Springs, Colo., to Chicago, Ill.; that he purchased a regular ticket for passage over said railroad; that he purchased from the agent of defendant an upper berth in one of its sleeping cars, to ride in and sleep in from Colorado Springs to Belleville, in the state of Kansas; that the defendant company was then engaged in the business of supplying passengers on said railroad with accommodations for sleeping during the night; that it was the duty of the defendant company to have had the roof and ventilating windows of the sleeper in which he rode and slept in a good, safe, and secure condition, so as to prevent water or rain from coming into the berth that plaintiff occupied; that, after occupying the berth during the night, he was awakened in the morning by water dripping in on his arm from the place above him, and he discovered that there was a wet place in his berth, near the head of the same, which had been caused by the water dripping into and upon the same, it having rained during the night (said wet place being about two feet long and two feet wide), and he found himself, when he woke, lying in said wet place, and as soon as he rose he discovered that he had, on account of said water having come into his berth, caught a severe cold; that the cold so contracted from the water having dripped into and having run into his berth continued to grow worse from day to day, and settled on his lungs; that he was finally prostrated by a high fever and severe coughing, and a pneumonic condition set in, and he continued to suffer exceedingly, and about the night of July 11, 1896, while he was coughing violently as the result of his becoming wet in said berth, a blood vessel was burst in his left lung, and he was attacked with a hemorrhage of the lungs; that he had hemorrhages for the next five days whenever an attack of coughing came; that he was confined to his bed until about August

---

[1] As to duties and liabilities of sleeping-car companies, see note to Duval v. Car Co., 10 C. C. A. 335.

8, 1896, and was dangerously ill, and on several occasions was at the point of death, but about August 8, 1896, through constant care and medical attention, he was able to leave his bed, and since that time he has been sufficiently strong and well to travel, and the general condition of his health is somewhat improved, but that through said exposure, and through his becoming wet in said berth, and through the negligence and carelessness of the defendant company in allowing the roof or the ventilating window of said sleeper to be in such an unsound, unsafe, and leaky condition, or in such a condition as to permit the coming in of water, he has been made an invalid for life, and has contracted and become permanently afflicted with consumption; and that since the night of July 3, 1896, he has suffered at times, as a result of the injuries mentioned, intense pain, and has suffered from repeated attacks of weakness and sickness, and has been compelled to expend large sums of money for the services of physicians and for medicines for his proper treatment, and has suffered great mental anguish. Subsequently Edmunson filed a supplemental petition, in which he set forth in detail the moneys expended by him for medical attendance and medicines.

The Pullman Palace-Car Company filed its answer in the United States circuit court. It pleaded a general demurrer, several special exceptions, a general denial, and special answers, in which it was alleged "that the car which plaintiff occupied on the night of July 3, 1896, which he claims was defective, whereby he was damaged, was not a leaky or defective car, but sound and in good condition, as were also the ventilating windows, and that, if any water or rain came in on the plaintiff's bed (which is denied), same was only such as, with the best of appliances, will enter when the wind strikes the car or window at certain angles, which cannot at all times be controlled without shutting off the air, or doing otherwise, to the great discomfort of the passenger, and which matter is always within the control of the passenger, and by custom and usage left to his discretion and direction, and that if plaintiff had exercised his right and prerogative, or used the proper precaution incumbent on him, he could and would have prevented the wetting he complained of,—in other words, if he or his bedding got wet on the occasion complained of, it was his own fault and want of proper care and precaution, and not that of defendant; that plaintiff was accustomed to traveling in sleeping cars, and knew the fact that in the summer months the ventilating windows were left open, for the comfort of the occupants of the berths, and knew, also, that he could have had same closed, if he so desired, and could have any proper attention for his protection in this regard, by notifying the porter or conductor in attendance. Defendant further denies that plaintiff's cold was contracted from the causes claimed by him, or that his maladies, sickness, or consumption was generated, created, or caused by said defective car, or the water dripping in on him and wetting him, as claimed by him. On the contrary, defendant says that the germ of said disease (he being then in a generally delicate condition) was in existence at and long before the 3d day of July, 1896, which fact was at the time he purchased his said ticket at Colorado Springs, as claimed by him, on said date, well known to him, but unknown to defendant. Defendant charges that plaintiff had suffered from pleurisy, and was a consumptive, long before the 3d day of July, 1896, and that this said disease was inherited by him, other constituents of his family being afflicted with the same trouble, and that defendant was at said time traveling for his health, and endeavoring to overcome said disease and prevent its further development, but that he negligently and carelessly took and accepted an upper berth, with windows open, knowing the condition of the weather, and knowingly took the risk attending such, if any there be." Defendant further answered that its business is not that of a carrier of any kind, but it only undertakes to furnish sleeping and toilet conveniences, and is under no obligations to furnish conveniences or accommodations of any particular class or kind, and did not on the occasion obligate itself or contract that no water would or could enter into the car, as claimed by plaintiff, and that, if any person was liable for the injuries received by plaintiff, the Chicago, Rock Island & Pacific Railway was liable.

The cause was tried in the United States circuit court, and resulted in a verdict and judgment in favor of the Pullman Palace-Car Company, defendant

below. During the trial, Edmunson, the plaintiff below, reserved three bills of exceptions. The first bill brings up all the evidence and testimony in the cause, and preserves the exceptions of the plaintiff below to the trial judge's general charge,—these exceptions being that the general charge "requires of the plaintiff a greater degree of proof than the law demands, or than is reasonable, and ignores the doctrine of the presumption of negligence which arises in this cause from the facts and circumstances established by the evidence; and the same is erroneous in the statement that, 'if, at the time of the occurrence, the plaintiff was afflicted with the disease known as "consumption" or "pulmonary tuberculosis," then he would not be entitled to recover.'" The second bill of exceptions preserves the refusal of the trial judge to give a special instruction requested by the plaintiff below, to the effect that proof on the part of the plaintiff that during the night water leaked into his berth and wet him, and that he was thereby injured, would entitle him to recover, unless the defendant should prove that it was without negligence in the matter complained of by the plaintiff. The third bill of exceptions preserves the refusal of the trial judge to grant a special instruction requested by the plaintiff below to the effect that, if the jury found for the plaintiff, he would be entitled to recover for all the sickness, loss, and injury which he may have suffered in consequence of getting wet in the berth, notwithstanding he may have had the consumption when he got wet. The fourth bill of exceptions relates to the granting by the trial judge of a special instruction requested by the defendant below to the effect that "the fact that water came into the car and wet the plaintiff is not in itself sufficient to prove negligence on the part of the defendant." James N. Edmunson, the plaintiff below, has sued out this writ of error.

P. S. Benedict, Max Dinkelspiel, W. O. Hart, and Millard Patterson, for plaintiff in error.

J. D. Guinn, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge, after stating the facts, delivered the opinion of the court.

The entire evidence adduced in the lower court is before us, having been embodied in one of the bills of exceptions. The view which we entertain of this cause on the evidence makes it unnecessary to pass on the assignment of errors. The alleged errors relate to certain charges given to the jury by the trial judge, and to his refusal to give certain other charges. Even if there be merit in these complaints,—and we are not to be understood as expressing any opinion on that matter,—Edmunson, the plaintiff below, who is the plaintiff in error here, could not have been injured by erroneous charges, if it is clear that under the evidence he could not have recovered. The negligence which the plaintiff below seems to have charged against the sleeping-car company, as the basis of the action, is that it allowed the roof or the ventilating window of its coach, above the berth occupied by him, to be in "an unsound, unsafe, and leaking condition," whereby water dripped upon and wet him; the result being that he contracted consumption, and incurred certain expenses for medical attendance and medicines. The evidence adduced on the trial by the plaintiff below, the charges asked for by him, the errors assigned, and the argument of the cause, all show that the alleged negligence upon which he based his case was that the roof or ventilating window of the coach was defective. If the plaintiff below

wished to raise the issue whether the rain dripped in, not because of any defect in the roof or window, but because the servants of the sleeping-car company did not close the ventilating window, that issue should have been plainly made in the pleadings. The allegations of negligence were "that it was the duty of the defendant to have had the roof and ventilating windows * * * in a good, safe, and secure condition, so as to prevent water or rain from coming into the berth," and that the defendant below was negligent "in allowing the roof or the ventilating window * * * to be in an unsound, unsafe, and leaking condition, or in such a condition as to permit of the coming in of water." We say again that, even if these allegations were sufficient to raise an issue as to whether, the roof and window being sound, it was the duty of the defendant below to have the window closed by its servants, the whole conduct of the case on the part of the plaintiff below shows that he was not relying upon such an issue. However this may be, we have carefully examined the cause as if both of the issues just mentioned had been fairly presented, and we are of opinion that under neither issue was the plaintiff below entitled to recover on the undisputed evidence. The uncontradicted proof showed that the roof and the ventilating window were sound and properly constructed; that, even with the best construction, if a ventilating window of a sleeper is left open, rain may enter and drip down on the upper berth, when the wind is high and blows the rain against the window, and the train is running rapidly,—especially when turning curves. The mother and sister of Edmunson occupied the lower berth, he himself taking the upper one. It rained very hard during the night. After sleeping during the night, he was awakened in the morning, about 6 or 7 o'clock, by water dripping on his arm, and he found that his bed was wet. He testified that the water seemed to come from about where the ventilating window was. He is a lawyer, and has traveled to a great extent in sleeping cars. He usually occupied a lower berth. A brother and sister of his died of consumption, as also a brother and sister of his mother. He had always had some little apprehension about having lung trouble, on account of his family history. It was shown, without denial, that his lungs were always weak and delicate, and that he was in danger of tuberculosis at any time. It was proven, without denial, that in the summer time the ventilating windows are generally left open, and that they are always opened or closed at the request of the occupants of the upper berths, and that a person occupying an upper berth can open or close the ventilating window. The occurrence complained of took place in midsummer. There was no proof that the defendant below was notified that Edmunson required any special care or attention, or that there was anything in his appearance which indicated that he needed such care or attention. On the contrary, he contended at the trial that he was well before the night on which he was wet, except that he was "a little run down."

It is clear that there was no proof that the defendant below was negligent, and that, under the undisputed facts in this cause, the plaintiff below could not recover. Therefore the judgment of the lower court is affirmed.