LOUISVILLE & N. R. CO. v. FISHER.

SCOTT v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 18, 1907.)

Nos. 1,628, 1,618.

1. REMOVAL OF CAUSES—NONRESIDENCE OF BOTH PARTIES—CONSENT.

A Circuit Court acquires jurisdiction of a suit by removal, although neither of the parties is a resident of the district, and the suit could not originally have been brought in that court, where the plaintiff fails to object in any way to such removal, and submits to trial on the merits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 203.]

2. CARRIERS—CARRIAGE OF PASSENGERS—PERFORMANCE OF CONTRACT.

A railroad company cannot be held answerable to a passenger in damages because of matters which are ordinary incidents of travel, such as exposure to drafts from windows opened by, or at request of, other passengers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1087.]

3. SAME—ACCOMMODATIONS DURING TRANSIT.

Plaintiffs purchased first-class tickets over defendant's railroad for passage between two points, and also tickets for a berth in a sleeping car between such points; such car being operated by another company and hauled under contract by defendant. At 3 o'clock in the morning, when some 45 miles from plaintiffs' point of destination, owing to a wreck beyond such point, the sleeping car was diverted and sent around over another road to its point of destination, and plaintiffs were required to transfer into a day coach for the remainder of their journey, which was made in about two hours. The car so provided was comparatively new and in good condition, and the only material complaint in regard to it was that it was filled with passengers, and the windows were kept open; the month being August, although the night was somewhat chilly. *Held,* that such facts did not establish a breach of the contract of carriage which rendered defendant liable in damages.

4. SAME—SLEEPING CAR COMPANY—CONTRACTS FOR ACCOMMODATIONS.

A sleeping car company which sells accommodations in its cars between points on a railroad to passengers of the railroad company, the cars being hauled by the railroad company in its trains under a contract between the two companies, is not liable to a passenger for breach of contract because the car in which such passenger is riding is diverted by the railroad company on account of a wreck and does not reach the passenger's point of destination, in consequence of which he is compelled to change into another car.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

John B. Keeble and E. T. Seay, for railroad company.

K. D. McKellar, for Fisher.

J. L. McRee, for Pullman Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. Mrs. Anna M. Baldwin, an aged lady, and her daughter, Mrs. George Y. Scott, bought at Memphis, Tenn., from the Louisville & Nashville Railroad Company, tickets entitling them to first-class transportation from Memphis, Tenn., to Bowling Green, Ky., by a train leaving at 1 p. m. August 9, 1902, and due to

arrive at Bowling Green about 5 o'clock a. m. They also bought from the agent of the Pullman Palace Car Company at Memphis one sleeping car ticket entitling them to the use of one sleeping berth as far as Bowling Green. The route of this sleeper was between Memphis and Cincinnati. About 3 o'clock a. m. of the following morning they were awakened by the Pullman conductor at or near Guthrie, Ky., and told that in consequence of a wreck north of Bowling Green the sleeper would be detoured at Guthrie and carried by way of Nortonville and over the Illinois Central Railway; thence into Louisville; and thence to Cincinnati over the Louisville & Nashville. They were also advised that they could by an ordinary coach go on to Bowling Green, which would enable them to reach their destination in about two hours. Plaintiffs were thereupon given seats in a day coach, and arrived at Bowling Green about on time. Upon the facts of the case, alleging a breach of contract, separate actions were brought by each against the railroad company and the Pullman Car Company. Pending the suit of Mrs. Baldwin, she died, and her action was revived by her administrator, and her declaration amended so as to charge that her death was due to her wrongful removal from the sleeper to the day coach. Both suits were submitted to the same jury, who found for Mrs. Baldwin's administrator for $2,500 against the railroad company and for the railroad company against Mrs. Scott. In both cases there was an instruction to find for the Pullman Company. The railroad company has sued out a writ of error in the one case, and Mrs. Scott in the other, and the cases have been heard together upon the same transcript.

A question of jurisdiction of the court below was suggested by the court growing out of the fact that the plaintiffs were citizens of the state of Mississippi, the Louisville & Nashville Railroad Company, a corporation of the state of Kentucky, and the Pullman Palace Car Company, a corporation of the state of Illinois. The suits were brought in the circuit court of Shelby county, Tenn., and removed into the Circuit Court of the United States for the Western District of Tennessee upon the application of the two defendant corporations solely upon diversity of citizenship. Thus the suits were not brought within either the district of the plaintiff or that of the defendants, and, not being a suit which might have been originally brought in the court to which it was removed, was not properly removable to that court from the state court. Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150.[1] But the defendant corporations might and did waive any objection which they might have made to being sued in a district of which neither they nor the plaintiff were inhabitants, by themselves removing the suits, and the plaintiff submitted to the jurisdiction thus invoked by failing to object in any way to such removal and by submitting to a trial upon the merits. This consent by both parties to the jurisdiction takes the case outside the authority of Ex parte Wisner, and brings it under Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98, which is recognized in the former case as an authority when both parties have submitted to a suit in the district of neither; federal jurisdiction otherwise appearing. Corwin Mfg. Co. v. Henrici Washer Co. (C. C.) 151 Fed. 938.

The question of the liability of the railroad company is the same in

[1] 51 L. Ed. 264.

each case, as the evidence was the same, and the ground of action identical. We consider the case of Mrs. Baldwin first

In Tennessee, the statute provides that:

"Whenever the facts in the case entitle the plaintiff to sue for breach of contract, or at his election for a wrong or injury, he may join the statement of his cause of action in both forms or either." Shannon's Code Tenn., § 4439.

This is substantially what the defendant in error did, and while she states a contract, and sues for its breach, the gist of her action is the tort, the wrong and injury which arose out of the breach. The contract may in such cases be laid merely as the foundation of the duty which the defendant disregarded. Pouilin v. Canadian Pacific Ry. Co. (C. C.) 47 Fed. 858. Two distinct contracts are stated in the declaration, one with the railroad company, and the other with the Pullman Company. In one count there is the semblance of a statement of a joint contract, but the facts stated make it plain that the contract with each was distinct. The contract with the railroad company, as averred, is that it sold to the plaintiff "a full-rate ticket by which said railroad contracted to convey her in a first-class car all the way from Memphis to Bowling Green." The contract with the Pullman Company, as stated, is that she also bought a sleeping car ticket from its "agent at Memphis, paying full fare therefor, upon which ticket she was to receive sleeping car accommodations from Memphis to Bowling Green."

The court below instructed a verdict for the Pullman Company, and no writ of error has been sued out by Mrs. Baldwin's administrator against that company. We need not, therefore, consider its liability until we come to Mrs. Scott's writ of error to which it is a party. The only breach of the contract with the railroad company averred is in respect to the alleged failure of that company to carry her all the way to Bowling Green in a first-class car. That she was carried there is admitted, but it is averred she was removed from the sleeper in the nighttime and required to continue her journey in what is described as "an open car, in which were crowded men, women, and children, and in which all of the windows and doors were open." It is also said that:

"It seemed to have been an old car found somewhere along the company's line and for this supposed emergency, and was wholly different from the car in which the defendants had contracted to carry plaintiff to her destination."

It is then averred that the plaintiff was about 75 years of age, though she had enjoyed theretofore good health. That in consequence of exposure in this open car she contracted cold, and had been ill ever since. By the amended declaration it is charged that her death some 18 months afterwards was proximately caused by this "willful and wanton and unlawful conduct of the two defendants, in requiring her to change from a comfortable car in the manner stated to one where she was exposed as aforesaid and wholly unfit for the safety of herself." The evidence establishes that the train carrying the sleeper in which Mrs. Baldwin and Scott had secured sleeping accommodations was a train which ran between Memphis and Bowling Green. At the latter point the sleeper was taken by a train from New Orleans

and Nashville to Louisville and Cincinnati. In consequence of a wreck just beyond Bowling Green, it became necessary, in the opinion of the authorities, to detour this train at Guthrie, via Nortonville; thence, over the tracks of the Illinois Central Railroad, to Louisville. The sleeper contained quite a number of passengers for Louisville and points beyond. To accommodate the larger number, plaintiff and her daughter, whose destination was Bowling Green, were told of the situation and asked to take seats in the day coach, which would be sent through at once to that point. The distance was only some 45 or 50 miles, requiring a journey of something less than two hours. There was evidence that they were given an election to go around by Louisville in the sleeper, and thence back to Bowling Green by another train, or continue their journey with such accommodations as were obtainable under the conditions. It is not clear, however, that this was understood. We therefore lay this evidence aside, stopping only to observe that a journey to Louisville and then back to Bowling Green would have entailed something like 400 more miles of travel than to have gone direct to Bowling Green, and that it is not at all probable that these ladies would have for a moment agreed to such a circuitous route. It was undoubtedly inconvenient to be aroused from sleep at 3 o'clock in the morning and to change from a sleeper to a day coach, and it must be assumed that the change resulted in some comparative discomfort for the rest of the journey. But traveling is attended with more or less discomfort, and a temporary condition resulting from a wreck ahead compelled the carrier to either detour the only sleeper with the train, or procurable at the time, to accommodate the greater number, or to carry it on to Bowling Green for the accommodation of the two passengers destined to that point at the risk of greatly delaying and inconveniencing the greater number.

The question at last is whether the railroad company breached its contract by detouring this sleeper and thus necessitating a change into the day coach provided. We think not. The sleeper was the property of the Pullman Company, and was carried under a contract between that company and the railroad company. The Pullman Company sold sleeping accommodations to such persons as should be provided with railroad tickets. The railroad company neither sold nor received compensation for such accommodations, and its relation to the whole matter was under its contract with the Pullman Company, and no contract between Mrs. Baldwin and the railroad company is averred or implied, other than the contract to carry her in a first-class car to her destination. It was not therefore a breach of any agreement with Mrs. Baldwin to detour this sleeper under the conditions, provided she was given a seat in a safe and reasonably comfortable car, such a car as ordinarily furnished by well-managed railroad companies, to Bowling Green. There was hardly any dispute about the character of the car in which the plaintiffs finished their journey. The plaintiff, Mrs. Scott, described it in her evidence "as an open smoker," and that a "chill east wind was blowing through it." By "open" she meant that the windows were up. But she admits that she did not complain of this fact, and made no effort to have the windows put down, saying: "As a matter of course I could not control every

window in the car." The car was partitioned; one end being used as a smoker. But no smoking occurred while the plaintiffs used it. It was a comparatively new car, with comfortable upholstered seats. The substantial complaint is therefore limited to the fact that the windows in the car were up, or many of them, and the doors open; the car being a vestibuled car. The night had been very close and hot. Toward morning it grew chill; but it was an August night, and it would be somewhat unusual to find a car full of passengers who should, under such circumstances, unite in wishing all of the windows closed. The relation of a carrier to passengers is not that of an insurer. They must exercise a high degree of care in respect to all which concerns their safe transportation, but are only liable for negligence. When it comes to the mere incidents of their personal comfort or discomfort in the matter of open or closed windows, much must be left with the individual passenger. It would be a most unreasonable thing to hold a carrier answerable for the exposure of passengers to such drafts as are ordinarily an incident of travel. Passengers must be expected to exercise some judgment and discretion about the matter of open or closed windows and have some regard to the comfort of each other. Mrs. Scott understood this implied condition of travel, for she explains her failure to complain by saying: "I did not feel like I had the privilege of making every one in the car close their windows." This being one of the incidents, it is plain that the railroad company did not break its agreement to convey her in a first-class car by carrying her in one which had more or less of raised windows, especially as the plaintiffs gave the company no notice of special discomfort and no opportunity of locating them where they would be protected as far as possible, having due regard to the rights and comfort of others who might wish fresh air. See Edmunson v. Pullman Palace Car Co., 92 Fed. 824, 34 C. C. A. 382. Neither was there anything in the special circumstances which was likely to require any special attention. True, she was past 70, but she was veiled, and her age therefore not specially noticeable. She was accompanied by her daughter, Mrs. Scott, and the daughter testified that her mother was unusually active for her age and in good health.

The view we have taken of the case was presented to the court by one of the special requests presented by the railroad company, which was denied. That request was upon the plain and indisputable facts of the case applicable and should have been given. The thirteenth assignment of error is sustained for this reason. The request was in these words:

"Each of the plaintiffs alleges that she bought of the defendant, the Louisville & Nashville Railroad Company, 'a full-rate ticket, by which said railroad company contracted to convey her in a first-class car from Memphis, Tenn., to Bowling Green, Ky.' It is not alleged that the Louisville & Nashville Railroad Company agreed or obligated itself to furnish either plaintiff with any particular kind or make of car, or a sleeping car, or that it in any way became obligated to do so. If, therefore, you find that the said Louisville & Nashville Railroad Company furnished plaintiffs substantially a first-class car, then it has complied with its undertaking, and you will find for the defendant, the Louisville & Nashville Railroad Company."

The learned trial judge did, in substance, so instruct the jury; but he unfortunately coupled it with the condition that they should so find if the plaintiffs were given an option to go on with the sleeper to Louisville and then back to Bowling Green, or by the car which went direct to Bowling Green. It was immaterial, we think, whether such an option was or was not tendered, for passengers could hardly be concluded by declining a circuitous route of some 20 or 24 hours as against one of less that 2 hours in a coach such as they had a right to expect and require. In the view we take of the case it is not necessary to pass upon any of the other assignments.

We find no error of which Mrs. Scott can complain. The Pullman Company's implied contract was to afford Mrs. Scott sleeping accommodation in their sleeper to her destination, provided the railroad company would carry it. Duval v. Pullman Company, 62 Fed. 265, 10 C. C. A. 331, 33 L. R. A. 715. The Pullman Company did not detour it. That was the act of the railroad company, which, finding it could not be carried through by Bowling Green without great delay, undertook to carry it to its destination by a longer and different route, thereby serving the larger number. The utmost liability of the Pullman Company would be the difference between the schedule rate for sleeping car accommodations from Memphis to Guthrie and from Memphis to Bowling Green. The price of a ticket to each place was the same.

Judgment affirmed as to Mrs. Scott and reversed as to Mrs. Baldwin.