### CINCINNATI, N. O. & T. P. RY. CO. v. BALL.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1923.)

No. 3754.

**Carriers �köm320(24)—Question of negligence in permitting excessive quantity of smoke and gas to enter passenger coach in tunnel held for jury.**

Testimony showing that, when passing through a tunnel half a mile long, the trainmen did not close the transoms or windows of a passenger coach, that the quantity of smoke and gas entering the car was very unusual, nearly suffocating passengers, and tending to show that the fireman stoked the engine immediately before entering the tunnel, *held* sufficient to require submission of the question of negligence of the railroad company to the jury.

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by R. F. Ball against the Cincinnati, New Orleans & Texas Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Edward Colston, of Cincinnati, Ohio (Wright, Wright & Saxton, of Knoxville, Tenn., on the brief), for plaintiff in error.

H. G. Fowler, of Knoxville, Tenn. (Fowler & Fowler and W. T. Kennerly, all of Knoxville, Tenn., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is to review a judgment, upon verdict of jury, in favor of defendant in error (plaintiff below) against plaintiff in error (hereinafter called defendant), for negligent injuries alleged to have been suffered by plaintiff while a passenger upon defendant's train, through the entry of an excessive and unusual volume of black and poisonous smoke and gases into the coach in which plaintiff was riding, while the train was passing through a long tunnel on a warm day in June. Defendant's negligence was charged to consist in the failure of the fireman to use care to prevent the engine from emitting smoke, including the putting of coal into the fire box of the engine, thereby causing the latter to emit dense clouds of smoke, with gases, which entered the coach, as well as the failure of the train crew to close the window, door, and transom openings into the coach, and in not warning the passengers of the approach to the tunnel. The defense was a general denial. The errors argued relate to the refusal to direct verdict for defendant, the submitting of certain questions of alleged negligence, and the charge relating thereto.

In our opinion it was not error to deny the motion to direct verdict for defendant. It is a commonplace that on review of such denial the testimony must be considered in its aspect most favorable to plaintiff, and that a verdict will not be set aside, as contrary to the evidence, if there was substantial testimony tending to support it. We think there was substantial evidence tending to establish defendant's negligence. The tunnel was about one-half mile long; it took nearly a minute to pass through it. There was testimony by passengers in this coach, experienced in traveling by rail and over the portion of road here involved, that during the passage through the tunnel an unusual and excessive volume of black smoke entered the coach. One witness said the smoke in the coach was as black as he ever saw it come out from a locomotive; that he had been through the tunnel on passenger trains many times before, and had never seen "smoke like that in that tunnel." Another said he had railroaded and gone through many tunnels, but "this was the worst I ever saw a coach, * * * extraordinary is putting it mild"; that it appeared to him as if the fireman "had just coaled his engine over. The coach was simply filled with smoke. I was sitting near the front door, and we could hardly see the door." Plaintiff said that he was accustomed to riding on trains through tunnels, had been riding up and down that road for the last 26 years, had been an employee of the railroad, "rode the trains daily," and never "saw anything like it in my life in a passenger train." One of these witnesses testified that the smoke made him cough, and that for a while he "had a hard time breathing." Another testified that the fumes and gas "like to have strangled him." Plaintiff testified, "This smoke like to have strangled me to death; it just shut off my breath;

* * * I didn't do anything, only groan; couldn't take care of myself"; that he could not get off the car by himself, but was helped by other men. There was testimony tending to show that he suffered from the effects of this experience for 18 months afterwards.

The front door of the car giving into the vestibule was open and latched back. There was testimony that the vestibule was not smoke tight. There was also substantial testimony tending to show that the smoke poured in, not only through open windows, but through the transoms; that while some, at least, of the passengers, including plaintiff, put down the windows by which they were sitting, the trainmen did not close the other windows; that the ventilating system had a front opening designed to suck in fresh air and a rear opening designed to discharge the air from the coach sucked into the passage through transoms in the upper side wall of the coach; that the front opening was not closed or closable, and that it sucked in smoke while passing through the tunnel and discharged it into the car through the side transoms; but the transoms in the car were closable, and, if closed, would have prevented smoke coming therethrough into the car. There was also testimony that the fireman stoked the engine until within about 100 yards (about five or six seconds) before entering the tunnel, and that it was possible to control to some extent the amount of smoke the engine will give off by not putting in so much coal at one time, and by gradually stoking in a few shovels at a time. There was also testimony that a fully loaded freight train passed through the tunnel nine minutes ahead of the train in question.

Considering this entire testimony in its aspect most favorable to plaintiff, we think it fairly presented a question for the jury whether defendant exercised the care for the safety and comfort of its passengers with which it was charged. In our opinion, the cases relied upon by defendant do not sustain its contention that, as matter of law, no negligence was shown. The instant case is, we think, clearly distinguishable from Edmunson v. Pullman Co., 92 Fed. 824, 34 C. C. A. 382, where the negligence charged was permitting rain to enter the upper berth through an open transom, which was under the complete control of the passenger. Nor does this case fall, in our judgment, within L. & N. R. R. Co. v. Fisher, 155 Fed. 68, 83 C. C. A. 584, 11 L. R. A. (N. S.) 926, involving an illness contracted by the plaintiff because of being chilled by drafts through open windows, which plaintiff made no effort to have closed, and which presumably were kept open because so desired, or perhaps thought to be desired, by those sitting near them. The other cases cited by defendant are, in our opinion, even less in point. The conclusion that there was substantial testimony sustaining a conclusion of negligence is not affected by opposing testimony on defendant's behalf. Even were plaintiff's testimony, either standing alone or in connection with defendant's testimony, thought to justify or even better to consist with a verdict for defendant, our conclusion must be the same. We think the entire testimony was for the jury's consideration; we have no right to weigh it, nor should we express an opinion upon the merits.

Nor is it of controlling importance, in view of the testimony, referred to, that plaintiff was, without defendant's knowledge, unusually

susceptible to injury from smoke. Recovery was permitted only, on a finding that defendant was negligent in permitting an unusual and excessive amount of smoke to enter the coach and with reason to apprehend that it was likely to injure, as distinguished from merely inconveniencing, a passenger.

The conclusion that a case for the jury was presented is not inconsistent with the right of the carrier to leave to its passengers, under normal conditions, the matter of opening or closing windows. The testimony here tends to show that the trainmen paid no heed to windows, even other than those usually controlled by passengers. ·

Nor does our conclusion involve condemnation or criticism of the ventilating system used. The case here presented is sui generis. No question of plaintiff's contributory negligence is raised. The charge upon that subject is not excepted to, nor is it here sent up. The motion to direct verdict for defendant was fairly addressed only to lack of evidence of defendant's negligence.

We also think there was no error in submitting to the jury each of the specific questions of defendant's negligence so submitted; that is to say, first, whether defendant was negligent in the manner its locomotive was operated or stoked, and notwithstanding the testimony on defendant's part that no stoking was done while the train was passing through the tunnel, and that it was necessary to stoke up to within 150 yards of the tunnel in order to keep up steam. It was for the jury to say whether or not that testimony should be believed, as against other testimony which might be thought to indicate the contrary. The same is true as respects the other question of fact submitted, whether it was negligence not to close the openings in the coach. We think the charge upon these questions was as favorable to defendant as it had , the right to ask.

The judgment of the District Court is accordingly affirmed.