# GUARDIAN TRUST AND DEPOSIT COMPANY *v.* FISHER.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 75. Argued November 28, 1905.—Decided January 2, 1906.

Section 1255 of the Code of North Carolina of 1883 provides that mortgages of corporations shall not exempt the property mortgaged from execution for judgments obtained in the state courts against the corporation for torts and certain other causes. A corporation constructed a plant for supplying a city with water, having received exclusive authority therefor from the city. It executed two mortgages, under the foreclosure of the second of which its plant was sold, subject to the first mortgage, to a new corporation, which then executed a further mortgage. Subsequently judgments were rendered in actions brought by property-owners against the new corporation for damages caused, as charged in the complaints and recited in the judgments by its negligence. On foreclosure of the outstanding mortgages the holders of these judgments were given priority over the mortgagees, notwithstanding the contention of the latter that the property owners had no contractual relations with, or right to maintain these actions against, the water company, that the judgments were not conclusive, the mortgagees not being parties thereto, and that only the equity acquired by the new company was subject to any judgment lien. In affirming the decision, *held* that:

Under the statute the mortgagees agreed to accept the judgments as conclusive of the amounts due. And the record, showing that negligence was alleged in the complaints and adjudged by the state court, discloses judgments in actions of tort.

One may by contract acquire an opportunity for acts and conduct in which parties other than those with whom he contracts are interested and for negligence in which he is liable to such other parties.

While a citizen may have no individual claim against a company contracting to supply water to a city for its failure to do anything under the contract, he may have a claim against it, after it has entered upon a contract and is engaged in supplying the city with water, for damages resulting from negligence and in such a case the action is not for breach of contract but for a tort.

Section 1255 is not a penal statute, but remedial, and should be liberally construed to give effect to the intent of the legislature to make the property of corporations security against its torts, and imposes upon the plant of a corporation responsibility for torts which cannot be avoided by a conveyance to a new corporation.

SECTION 1255 of the Code of North Carolina of 1883 reads:

"Mortgages of incorporate companies upon their property or earnings, whether in bonds or otherwise, hereafter issued, shall not have power to exempt the property or earnings of such incorporations from execution for the satisfaction of any judgment obtained in the courts of the State against such incorporation, for labor performed [nor for material furnished such incorporation], nor for torts committed by such incorporation, its agents or employés, whereby any person is killed or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding."

This was subsequently amended by leaving out the matter enclosed in brackets.

In 1887 a corporation was organized under the laws of North Carolina, which soon after secured the passage of an ordinance by the city of Greensboro, giving to it the exclusive right to the use of the streets, sidewalks and public grounds for the purpose of constructing, operating and maintaining a complete system of waterworks. A later ordinance provided that "said water company shall be responsible for all damage sustained by the city, or any individual or individuals,

for any injury sustained from the negligence of the said company, either in the construction or operation of their plant."

The corporation constructed the waterworks and also executed a mortgage or deed of trust, conveying its entire property and plant to secure the payment of fifty thousand dollars of bonds. A subsequent mortgage or deed of trust was foreclosed and the title to the property passed to a new corporation, subject to the lien of the first mortgage. After its purchase the new corporation executed a further mortgage or deed of trust. Subsequently two fires occurred, destroying property belonging to the respondents. Actions were commenced in the Superior Court of Guilford County by the owners of the property destroyed against the new corporation and judgments recovered, the judgment entries each reciting that the recovery was "for the injury and damage done him by the negligence of the defendant." 128 N. Car. 375. Proceedings having been commenced in the Circuit Court of the United States to foreclose the existing mortgages, a decree was entered and a sale made. Thereupon the judgment creditors intervened, insisting that in the distribution of the proceeds they were entitled to priority over the mortgage liens by virtue of the statute above referred to. The Circuit Court decided in their favor. 115 Fed. Rep. 184. Its judgment was taken on appeal to the Court of Appeals, from which court the case was brought here on certiorari.

*Mr. Archibald H. Taylor* and *Mr. John Peirce Bruns*, with whom *Mr. W. P. Bynum* was on the brief, for petitioners:

The state court had no power to determine the question of the liability of the mortgagees to answer out of their estate to the judgment creditors, but the sole jurisdiction for the decision of these questions is with the United States court, which had taken jurisdiction of the property and of all of the parties. The decision of the state court that a water company was liable to property owners for losses by fire, by reason of its contract with

the city, and that this liability was in tort, was only made after the rights of all parties had accrued.

Judgments in state courts against corporations of which the United States courts for sufficient cause have taken jurisdiction for the purpose of selling their property, distributing proceeds and ascertaining liens, have no validity against mortgagees of such corporations, who have properly invoked or obtained the jurisdiction of the United States court, unless the latter court, on examination of the facts upon which such judgments were obtained, itself pronounces such judgment valid, and awards. and enforces such claim. *Brooks* v. *Burlington R. R.*, 101 U. S. 443; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 292; *Central Trust Co.* v. *Condon*, 67 Fed. Rep. 103; *Trust Company* v. *Cincinnati*, 76 Fed. Rep. 296; *Trust Company* v. *Bridges*, 57 Fed. Rep. 753; *Trust Company* v. *Hennen*, 90 Fed. Rep. 595; *Hassell* v. *Wilcox*, 130 U. S. 503.

In determining the validity or nature of the cause of action upon which the judgments were recovered in the state court, neither the court below nor any United States court could accept the decision of the state court in these proceedings, because the questions are of general jurisprudence which a United States court must decide for itself. Curtis' Jurisprudence, 234; *Burgess* v. *Seligman*, 107 U. S. 33; *Swift* v. *Tyson*, 16 Pet. 18; *Rowan* v. *Runnels*, 5 How. 134; *Steamship Co.* v. *Insurance Co.*, 129 U. S. 397; *B. & O. R. R.* v. *Baugh*, 149 U. S. 368; *Venice* v. *Murdock*, 92 U. S. 494; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Railroad Co.* v. *National Bank*, 102 U. S. 14; *United States* v. *Peters*, 5 Cranch, 115; *Pease* v. *Peck*, 8 How. 600; *Folsom* v. *Ninety Six*, 159 U. S. 626.

The only question presented is, what was the decision obligatory upon the United States court below and this court, after these fires had taken place and prior to the decision of the first case arising out of them, and there could have been none other, than that the water company was not liable, either in contract or in tort. If so the cases decided after the rights of all parties had accrued, cannot change the law of the United States courts.

*Lake Shore R. R.* v. *Prentice*, 147 U. S. 101; *Knox County* v. *National Bank*, 147 U. S. 92.

The doctrine of United States courts and of all the state courts, with one exception, and of the English courts in respect to the causes of action asserted by these intervenors, the respondents here, against the defendant, the Greensboro Water Supply Company, supplying water under ordinance or contract to the city, is that such company is not liable for its failure to furnish adequate and proper supply to a citizen not having a direct contract with the company itself, for damage to his property, whether the suit be founded on contract or tort. 2 Dillon Mun. Corp. 975; *Trust Co.* v. *Salem Water Co.*, 94 Fed. Rep. 240. In *Lumber Co.* v. *Paducah Water Co.*, 12 S. W. Rep. 554; *S. C.*, 13 S. W. Rep. 249, there were private contracts; and see *Nichols* v. *Water Co.*, 44 S. E. Rep. 292; *Atkinson* v. *Water Works Co.*, 2 Exch. 445; *Davis* v. *Water Works Co.*, 54 Iowa, 60; *Gas Company* v. *Louisiana Co.*, 115 U. S. 651; *Vrooman* v. *Turner*, 69 N. Y. 480; *Becker* v. *Water Works Co.*, 79 Iowa, 419; *Britton* v. *Water Works Co.*, 81 Wisconsin, 48; *Hayes* v. *Oshkosh*, 33 Wisconsin, 314; *Nickerson* v. *Hydraulic Co.*, 46 Connecticut, 24; *Eaton* v. *Water Co.*, 37 Nebraska, 546; *Beck* v. *Water Works Co.*, 11 Atl. Rep. 300; *Stone* v. *Water Co.*, 4 Pa. Dist. Rep. 431; *Phœnix Ins. Co.* v. *Trenton Water Co.*, 42 Mo. App. 118; *Howsmon* v. *Water Co.*, 119 Missouri, 304; *S. C.*, 24 S. W. Rep. 784; *Fitch* v. *Water Co.*, 37 N. E. Rep. 982; *Foster* v. *Water Co.*, 3 Lea, 42; *Ferris* v. *Water Co.*, 16 Nebraska, 44; *Fowler* v. *Water Co.*, 83 Georgia, 219; *Mott* v. *Manufacturing Co.*, 48 Kansas, 12; *Bush* v. *Water Co.*, 43 Pac. Rep. 69; *Wainwright* v. *Water Co.*, 78 Hun, 146; *House* v. *Water Co.*, 31 S. W. Rep. 179; *Waterworks Co.* v. *Brownless*, 10 Ohio, 620; *Wheeler* v. *Cincinnati*, 19 Ohio, 19; *Taintor* v. *Worcester*, 123 Massachusetts, 311; *Van Horn* v. *Des Moines*, 63 Iowa, 447; *Howard* v. *San Francisco*, 51 California, 52; *Black* v. *Columbia*, 19 S. Car. 412; *Mendel* v. *Wheeling*, 28 W. Va. 262; *Manufacturing Co.* v. *Water Works Co.*, 113 Louisiana, 1091; *Blunk* v. *Water Supply Co.*, 71 Ohio St., 250; *Wilkinson* v. *Water Co.*, 78 Mississippi, 401.

As to the·distinction between torts and breaches of contract, and the control of the United States courts in determining these questions for itself, see 1 Chitty on Pl., 16th ed. 152; Bouvier's Law Dict. under "Torts"; Cooley on Torts, 2d ed., 2, 3, 104; Addison, 6th ed., 1, 14; 2 Jaggard, 27, 898; *Atl. & Pac. R. R. Co.* v. *Land,* 164 U. S. 399; *Langford* v. *United States,* 110 U. S. 346; *Wright* v. *Augusta,* 78 Georgia, 241; 7 Am. & Eng. Ency. Law, 977; *Fowler* v. *Water Co.,* 83 Georgia, 222; *Hodges* v. *Railroad Co.,* 105 N. Car. 171; *McCahan* v. *Hirst,* 7 Watts (Pa.), 178.

A water company owes no duty or obligation to the city, citizens or taxpayers of a community, to furnish water at all, much less of any adequate pressure or quantity, except such as may be imposed upon it by contract lawfully entered into. *Water Co.* v. *Skaneateles,* 184 U. S. 362; *Coy* v. *Gas Company,* 146 Indiana, 655, distinguished; and see *Fitch* v. *Water Co.,* 139 Indiana, 214.

*Mr. Aubrey L. Brooks* for respondents:

Full faith and credit must be given to the state court judgments. *Mills* v. *Duryee,* 7 Cranch, 484; *Hampton* v. *McConnell,* 3 Wheat. 234; *Crapo* v. *Kelly,* 16 Wall. 610; *Christmas* v. *Russell,* 5 Wall. 302; *Hanley* v. *Donoghue,* 116 U. S. 1; *McElmoyle* v. *Cohen,* 13 Pet. 312, 324; *Thompson* v. *Whitman,* 18 Wall. 457; *Hilton* v. *Guyot,* 159 U. S. 113; *Bryan* v. *Campbell,* 177 U. S. 648; *Harris* v. *Balk,* 198 U. S. 215; *Hampton* v. *McCall,* 3 Wheat. 234; *Mahue* v. *Thatcher,* 6 Wheat. 129; *Bank* v. *Dalton,* 9 How. 528; *Board of Public Works* v. *Columbia College,* 17 Wall. 521; *Railway Co.* v. *Wiggins Ferry Co.,* 108 U. S. 18; *Kansas City Ry.* v. *Morgan,* 21 C. C. A. 478; *Southern Railway* v. *Bouknight,* 70 Fed. Rep. 442; *Trust Co.* v. *Railway Co.,* 65 Fed. Rep. 257; *Huntington* v. *Attrill,* 146 U. S. 685.

The mortgages of the old and of the new company stand on the same footing. *Broughton* v. *Pensacola,* 102 U. S. 266; Code N. Car. § 697; 2 Cook on Stock, § 669; 1 Spelling on Corp., § 93; *Friedenwald* v. *Tobacco Works,* 117 N. Car. 544.

The mortgages of both the old and the new company are void under § 1255, Code N. Car. *Coal Co.* v. *Light Co.*, 118 N. Car. 236; *Potter's Dwarris*, 128; *Pennsylvania* v. *Railroad Co.*, 61 Fed. Rep. 369; *Lanston* v. *Improvement Co.*, 120 N. Car. 132; *Railroad Co.* v. *Burnett*, 123 N. Car. 214.

If the mortgagee permits the corporation to run the property he must take the risk of liability. *Brine* v. *Insurance Co.*, 96 U. S. 364; *Insurance Co.* v. *Cushman*, 108 U. S. 51; *Insurance Co.* v. *Jersey City*, 113 U. S. 506; *Railroad Co.* v. *Hamilton*, 134 U. S. 30; *Railroad Co.* v. *Frazier*, 139 U. S. 288.

These judgments in the state court are based upon a cause of action well recognized by law, and in accordance with both English and American precedents. The causes of action are based upon a breach of duty implied and imposed by law, as well as arising from contract, and the intervenors had their election to sue in contract, or in tort. They chose the latter. *Keener on Quasi Contracts*, 160; *Griffith* v. *Water Co.*, 122 N. Car. 206; *Young* v. *Telegraph Co.*, 107 N. Car. 384; *Robinson* v. *Threadgill*, 35 N. Car. 41; *Williamson* v. *Dickens*, 27 N. Car. 260; *Bond* v. *Hilton*, 44 N. Car. 308; *Solomon* v. *Bates*, 118 N. Car. 315; *Fisher* v. *Water Co.*, 128 N. Car. 375; *Atl. & Pac. R. R. Co.* v. *Land*, 164 U. S. 399.

For the liability and obligation of water companies under contracts, see *Water Co.* v. *Walla Walla*, 172 U. S. 1, 9; *Dillon Mun. Corp.*, § 691.

Corporations enjoying public franchises and engaged in public employment, for which they receive toll, owe a duty to the public as well as to each individual, to perform the duties undertaken and incident thereto, which duty, in this case, was almost exclusively to furnish a sufficient pressure of water to extinguish fires, and this obligation, raised by the law, is added to and superinduced by the provisions of the contract under which the corporation is acting. *Webb's Pollock on Torts*, 20, 69 and cases cited; *Coy* v. *Gas Co.*, 36 L. R. A. 535; *2 Addison on Contracts*, 1119; *Railroad Company* v. *Eaton*, 48 Am. Rep. 179; S. C. 94 Indiana, 474; *Brown* v. *Railroad Co.*, 41 Am.

Rep. 41; *Bank* v. *Graham*, 100 U. S. 702; *Lumber Co.* v. *Water Supply Co.*, 89 Kentucky, 340.

' This court will be governed by the decisions of the state court in a matter of this kind. *Water Co.* v. *Freeport*, 180 U. S. 595; *Burgess* v. *Seligman*, 107 U. S. 20.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

It is contended that neither the plaintiff in the pending suit nor the bondholders whom it represents were parties or privies to the actions in the state court; that therefore the judgments of the latter court were not conclusive in the foreclosure proceeding as to the nature of the causes of action; that whether they were for torts or breaches of contract is for the determination of the Federal court, and further, that when the property passed from the old to the new water company it passed subject to the fifty-thousand dollar mortgage, and that under this statute, if applicable at all, only the interest in the property acquired by the second water company was responsible for the damages caused by its negligence. On the other hand, it is contended that the statute deals with judgments—not claims for damages caused by negligence; that the decision of the state court as to the nature of the cause of action is as much a part of the judgment as the determination of the amount to be recovered; that a judgment which in terms is for damages caused by negligence, if entered by a court having jurisdiction, is made by the statute superior to any mortgage; that by the mortgage the mortgagee and the bondholders it represents agree to accept such judgment as conclusive and to subordinate their mortgage to its lien; that to hold that the transfer of property incumbered by a mortgage from one company to another puts that mortgage outside the statute practically destroys its beneficial intent; that such has been the holding of the Supreme Court of the State, and is a holding which the Federal courts will follow.

We shall assume, without deciding, that the nature of the causes of action upon which the state judgments were rendered is open for consideration in the Federal court in the foreclosure proceeding. The statute subordinates the mortgage to judgments for torts. Now what is the judgment? It is a determination that upon the facts stated the plaintiff is entitled to recover so much money. It may not be essential that it recite whether the facts stated show a breach of contract or a tort, but it is essential that the judgment should be considered as a determination that upon those facts the plaintiff is entitled to recover. And it must be assumed that under the statute the mortgagee and the bondholders it represents agree to accept the judgment as conclusive in this respect, or if not conclusive, at least *prima facie* evidence. In this foreclosure proceeding the record of the proceedings in the state courts was introduced in evidence. Taking the *Fisher case,* for illustration, the complaint sets out fully the contract made between the city of Greensboro and the water company, and the proceedings by which the title to the property passed from the one company to the other; alleged the destruction by fire of the plaintiff's property, and that he was free from all negligence in the matter. It added:

"The plaintiff alleges that the defendant company was culpably negligent and willfully careless of its duty and obligations, both to the city of Greensboro and its inhabitants, under the said contract, and by virtue also of the duties, obligations and responsibilities which it assumed when it undertook to supply water to the city of Greensboro and its inhabitants for a stipulated price, which was paid to it by the said city."

It then set forth as matters of negligence on the part of the water company the "carelessly, willfully and negligently failing to keep a sufficient quantity of water in its storage water tank in the said city of Greensboro, necessary for the purpose of extinguishing fire, together with the other uses to which it was applied;" also a failure "to keep its pumping engine

Vol. cc—5

ready at all times, and particularly on the day of the fire above referred to, to supply the needed fire pressure, in that it negligently failed to keep a suitable person at said engine or pumping house, or near the same, for the purpose of responding to the demands for water for the extinguishment of fire, and especially did it fail so to do at the time the property of the plaintiff was burned;" and closed with this averment: "That it was through no fault of the plaintiff that the said fire occurred, or that the same was not immediately extinguished; but that the negligence and omissions of duty, heretofore complained of on the part of the defendant company, was the proximate cause of the destruction of his property, whereby the defendant company becomes liable therefor."

The answer consisted mainly of denials in separate paragraphs of the averments in corresponding paragraphs of the complaint, specifically denying the validity of the contracts between the city and the original water company. Questions were submitted to the jury and answers returned, establishing the making of the contracts, the attempt on the part of the company to perform its stipulations, its failure to do so successfully, and also that the plaintiff was injured by the negligence of the defendant.

Upon this record the Supreme Court of North Carolina ruled that the action was one in tort, saying:

"We think the plaintiff was entitled to judgment as prayed for. There was an express and legal obligation upon the part of the defendant to provide and furnish ample protection against fires, and a breach of that obligation and a consequential damage to the plaintiff. Although action may have been maintained upon a promise implied by law, yet an action founded in tort was the more proper form of action, and the plaintiff *so declared*. He stated the facts out of which the legal obligation arose, fully, and also the obligation itself, and the breach of it and the damage resulting from that breach. Chitty on Pleading, vol. 1, page 155; Thompson on Corpora-

tions, vol. 5, sec. 6340." *Fisher* v. *Greensboro Water Supply Company,* 128 N. Car. 375, 379.

From the conclusion thus reached we are not inclined to dissent and for these reasons. One may acquire by contract an opportunity for acts and conduct in which parties other than those with whom he contracts are interested and for negligence in which he is liable in damages to such other parties. A company is chartered to construct and operate a railroad. Proceeding thereunder it constructs and operates its road. Nothing may be said in the charter in reference to the manner in which the road shall be operated or the particular acts which it must do. Yet without any such specification it is under an implied obligation to exercise reasonable care in both construction and operation. If from undue speed, failure to give proper warnings, or other like acts or omissions, individuals are injured, they may recover for such injuries, and their actions to recover sound in tort. Doubtless in the same transaction there may be negligence and breach of contract. If a railroad company contracts to carry a passenger there is an implied obligation that he will be carried with reasonable care for his safety. A failure to exercise such care, resulting in injury to the passenger, gives rise to an action *ex contractu* for breach of the contract, or as well to an action for the damages on account of the negligence—an action sounding in tort. But where there is no contract, and the injuries result from a failure of the corporation to exercise reasonable care in the discharge of the duties of its public calling, actions to recover therefor are strictly and solely actions *ex delicto.* Pollock, in his treatise, groups torts into three classes, in the last of which he specifies "breach of absolute duties specially attached to the occupation of fixed property, to the ownership and custody of dangerous things, and to the exercise of certain public callings." Webb's Pollock on Torts, 7. This, it is said, implies the existence of some absolute duty not arising from personal contract with the other party to the action.

And here we are met with the contention that, independently of contract, there is no duty on the part of the water company to furnish an adequate supply of water; that the city owes no such duty to the citizen, and that contracting with a company to supply water imposes upon the company no higher duty than the city itself owed, and confers upon the citizen no greater right against the company than it had against the city; that the matter is solely one of contract between the city and the company, for any breach of which the only right of action is one *ex contractu* on the part of the city. It is true that a company contracting with a city to construct waterworks and supply water may fail to commence performance. Its contractual obligations are then with the city only, which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. It may also be true that no citizen is a party to such a contract, and has no contractual or other right to recover for the failure of the company to act, but if the company proceeds under its contract, constructs and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and if they avail themselves of its conveniences and omit making other and personal arrangements for a supply of water, then the company owes a duty to them in the discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty, and recovery may be had for such neglect. The action, however, is not one for breach of contract, but for negligence in the discharge of such duty to the public, and is an action for a tort. "The fact that a wrongful act is a breach of a contract between the wrongdoer and one person does not exempt him from the responsibility for it as a tort to a third person injured thereby." *Osborne* v. *Morgan*, 130 Massachusetts, 102, 104. See also *Emmons* v. *Alvord*, 177 Massachusetts, 466, 470. An individual may be

.under no obligation to do a particular thing, and his failure to act creates no liability, but if he voluntarily attempts to act and do the particular thing he comes under an implied obligation in respect to the manner in which he does it. A surgeon, for instance, may be under no obligation, in the absence of contract, to assume the treatment of an injured person, but if he does undertake such treatment he assumes likewise the duty of reasonable care in such treatment. The owner of a lot is not bound to build a house or store thereon; but if he does so he comes under an implied obligation to use reasonable care in the work to prevent injury therefrom to others. Holmes on the Common Law, 278. Even if the water company was under no contract obligations to construct waterworks in the city or to supply the citizens with water, yet having undertaken to do so it comes under an implied obligation to use reasonable care, and if through its negligence injury results to an individual it becomes liable to him for the damages resulting therefrom, and the action to recover is for a tort and not for breach of contract.

With reference to the contention that only the interest in the property acquired by the second water company was responsible for the damages caused by its negligence—a contention which, if sustained, would result in giving priority to the fifty-thousand dollar mortgage—the argument is that by the statute "mortgages of incorporate companies . . . shall not have power to exempt the property or earnings of such incorporations . . . for torts committed by such incorporation;" that the torts were committed by the second water company; that its purchase was of the property of the first company, subject to the fifty-thousand dollar mortgage, and therefore over that property thus encumbered, and that only, were the judgments given priority. There is, doubtless, force in this contention. But this is not a penal statute, to be construed strictly, but remedial in its nature, and to be construed liberally, to carry into effect the intention of the legislature and provide the adequate remedy which it in-

tended. The obvious purpose was to make the corporate property situate in the State security against torts committed by its owner, and it would materially impair if not wholly destroy the statute, and thus set at naught that purpose if the corporation constructing the plant could place a mortgage thereon for its entire value and then by sale to a new corporation enable the purchaser to use that property discharged of all substantial responsibility. In reference to a kindred question arising under the same statute the Supreme Court of North Carolina said in *Railroad Company* v. *Burnett,* 123 N. Car. 210, 214, that under such construction "this statute would be a false light held out to such claimants to induce them to furnish material and labor—thinking they had a security, when in fact they had none."

It is more reasonable to hold that the statute imposes upon the investment made by a corporate company in its plant a responsibility for torts committed by it or any subsequent corporate owner, and that that responsibility cannot be avoided by any mortgage or other incumbrance voluntarily placed upon the property. Security to the individual citizen is to go hand in hand with the franchise and privilege granted by the State. We see no other question requiring notice, and the decree of the Circuit Court is

*Affirmed.*

Mr. Justice White, Mr. Justice Peckham and Mr. Justice McKenna dissented.