UNION TRUST CO. et al. v. SOUTHERN SAWMILLS & LUMBER CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   November 5, 1908.)

No. 733.

1. CORPORATIONS (§ 548*)—CREDITORS' SUITS—EQUITY JURISDICTION.

A court of equity has jurisdiction to entertain a creditors' suit, in advance of securing lien, against a private corporation and to appoint a receiver therein, where the corporation appears and interposes no objection but consents to the action taken.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2184;  Dec. Dig. § 548.*]

2. RECEIVERS (§ 118*)—RECEIVERS' CERTIFICATES—AUTHORITY TO ISSUE.

In a creditors' suit against a private corporation to which neither the bondholders of the corporation nor the trustee in the mortgage securing the same are parties, the court has no authority to issue receivers' certificates for pre-existing debts of the corporation and make the same a first lien on its property.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 206;  Dec. Dig. § 118.*]

3. CORPORATIONS (§ 566*)—INSOLVENCY AND RECEIVERS—PRIORITY OF CLAIMS.

Expenditures for betterments on the property of an insolvent private corporation made by a receiver appointed in a creditors' suit to which the mortgage creditors of the corporation were not at the time parties cannot be allowed and paid by the court from the corpus of the property, when sold, in preference to the mortgage debt, and especially where the betterments made were improvements on the property, which under the law of the state, if made by the mortgagor, would have inured to the benefit of the mortgagee, and would also have passed under an after-acquired property clause of the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2284;  Dec. Dig. § 566.*]

4. SALES (§ 473*) — MORTGAGES — LIEN AND PRIORITY—PROPERTY HELD UNDER CONDITIONAL SALE CONTRACTS.

Under Revisal N. C. 1905, § 983, conditional sale contracts of personal property are in effect chattel mortgages, and are required to be recorded as such, and such contracts covering machinery or fixtures sold to a corporation and attached by the purchaser to realty which is subject to a mortgage containing an after-acquired property clause, unless recorded, are not effective as against the mortgagee.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1387;  Dec. Dig. § 473.*]

5. CORPORATIONS (§ 566*)—MORTGAGES—LIEN AND PRIORITY—PROPERTY HELD UNDER CONDITIONAL SALE CONTRACTS.

Contracts of conditional sale of loose personal property, such as live stock, to a corporation, although not recorded as required by Revisal N. C. 1905, § 983, where the property passes into the hands of a receiver for the corporation and is sold together with its other property, entitle the sellers to priority of payment from the proceeds over the holders of a prior mortgage upon the property of the corporation containing an after-acquired property clause.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2284;  Dec. Dig. § 566.*]

6. ASSIGNMENTS (§ 78*)—RIGHTS PASSING AS INCIDENTS—RIGHTS TO LABORER'S LIEN.

Claims of laborers for wages are assignable, and an assignment thereof carries the right to a lien given to such claims by a state statute, where

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the money to pay the same was advanced to the laborers themselves in reliance on such lien and not on the credit of the employer.

[Ed. Note.—For other cases, see Assignments, Dec. Dig. § 78.*]

7. CORPORATIONS (§ 566*)—INSOLVENCY AND RECEIVERS—PRIORITY OF CLAIMS —STATUTE GIVING LABOR CLAIMS PRIORITY OVER MORTGAGE.

Under Revisal N. C. 1905, § 1131, which provides that "mortgages of corporations upon their property or earnings, whether in bonds or otherwise, shall not have power to exempt the property or earnings of such corporations from execution for the satisfaction of any judgment obtained in courts of the state against such corporations for labor performed * * * any clause or clauses in such mortgage to the contrary notwithstanding," which is to be liberally construed, where the assets of a corporation are being administered in equity through a receivership, claims for labor may be proved and given priority over a mortgage without having been first reduced to judgment, the decree adjudging the amount of the claim being the equivalent of a judgment for the purposes of the statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2284; Dec. Dig. § 566.*]

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina, at Raleigh.

This is an appeal from the final decree entered in the two above consolidated causes on the 21st of January, 1907. The subject-matter involved in the suits was the property of the Southern Sawmills & Lumber Company. The last-named suit was filed by unsecured creditors of the company (hereinafter called the "creditors' suit"), in which the defendant appeared and answered, and without objection a receiver was appointed to take charge of all of its assets, consisting of its sawmill and lumber plant, situated at Kingsdale, N. C., who at once took possession of the same. Upon this property there was a mortgage to the Union Trust Company, trustee, to secure a large bonded indebtedness, Robert L. Forrest being a large bondholder. At the time of the appointment of the receiver, only the Southern Sawmills & Lumber Company was made defendant, neither the trustee in the mortgage nor the bondholders being made parties. Subsequently, Forrest, on behalf of himself and other bondholders, instituted as an independent suit, the first above-entitled cause (hereinafter called the "bondholders' suit"), making the sawmill company, the receiver theretofore appointed in the creditors' suit, and the Union Trust Company, trustee, parties defendant, and in this bondholders' suit the Union Trust Company, trustee, subsequently filed its answer and cross-bill. The receiver appointed in the creditors' suit operated the property for some time, without success, and prior to the institution of the bondholders' suit, or the coming in of the trustee as aforesaid, the court had issued receiver's certificates in a large sum to cover debts due by the defendant company, the validity of the issue of which is one of the questions to be determined in this appeal. The administration of the trust under the receivership continuing unsuccessful, the receiver was removed, and a new one appointed to take his place. In the progress of the litigation the plant was sold, and there now remains for distribution among creditors and others entitled thereto the sum of $33,000 arising from the sale of the corpus of the plant, and some $8,000 from a recovery had on the bond of Receiver Edwards, appointed as aforesaid in the creditors' suit. The lower court entered a decree distributing the fund, and the correctness of the terms of said decree is now here for review by this court.

The decree appealed from recognized generally the illegality of the receiver's certificates, but held that certain of them issued to pay debts having priority in equity over the mortgage indebtedness, or for debts having a lien under the state statute, were valid against the bondholders, and that there should be set aside as against the bondholders the sum of $11,425.27 for betterments made on the property pending the receivership, which sum should be ap-

plied to the payment of debts evidenced by the receiver's certificates to the exclusion of the bondholders; and the court thereupon decreed to whom those funds, set aside on account of betterments, should be paid, and also what claims, independent of the betterment fund, should take precedence over the bonded indebtedness, the latter claims amounting to $11,514, as shown in statement "C" mentioned in said decree, and in addition allowed as entitled to equal dignity a claim of $1,753.71 to the Kingsdale Store Company.

Iredell Meares and Louis C. Williams (Braxton, Williams & Eggleston, on the briefs), for appellants.

J. G. McCormick and F. H. Busbee (C. M. Busbee, C. H. Belvin, and McLean, McLean & McCormick, on the briefs), for appellees.

Before WADDILL, BOYD, and DAYTON, District Judges.

WADDILL, District Judge (after stating the facts as above). Many questions are raised by the assignments of error, and were earnestly pressed in argument, that need not be dwelt upon especially by the court, although all have been duly considered; among them, first, the right to institute and maintain the creditors' suit, and, second, the validity of the receiver's certificates issued therein. In passing, it may be said that the defendant, having appeared and interposed no objection to the institution of the creditors' suit, in advance of securing lien, and answered and consented to the action taken therein, under the decision in Hollins v Brierfield, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, and that line of cases, the court had authority to entertain the suit and take the action it did. As to the general proposition of the right to issue receiver's certificates, in a case involving a private, and not a public, corporation, certainly to pay pre-existing debts of the corporation, upon the then state of the pleadings, neither the trustee in, nor the bondholders secured under, the mortgage being before the court, such authority did not exist so as to give the same a preference as against the bondholders. In Bernard v. Union Trust Co., 159 Fed. 620, 86 C. C. A. 610, a decision of this court, involving one of the same issue of receiver's certificates as those in issue here, this very question was decided, and we find no reason for in any way departing from or modifying the views there expressed; and to the same effect will be found Fidelity Ins. Co. v. Roanoke Iron Works (C. C.) 68 Fed. 626, a decision of Judge Paul of the Western district of Virginia, and Baltimore B. & L. Association v. Alderson, 90 Fed. 142, 32 C. C. A. 542, a decision of this court, opinion by Judge Simonton. See, also, Union Trust Co. v. R. R. Co., 117 U. S. 434, 456, 460, 6 Sup. Ct. 809, 29 L. Ed. 963.

The questions necessary to be decided are whether the lower court erred in deducting or setting aside from the fund arising from the sale of the corpus of the property the amount for betterments above shown, and correctly ascertained the parties to whom the same should be paid; also whether the court properly determined the claims having a lien by statute, or entitled to priority in equity over the bondholders to be paid out of the corpus of the estate, independent of the fund so set aside for betterments. We will consider these propositions in the order named, and determine just how the funds remaining under the control of the court shall be distributed.

First. The allowance for betterments of $11,425.27, as made by the lower court, comes directly out of the corpus of the property, and consumes about one-third thereof, and is, by the decree appealed from, to be paid to persons who confessedly have no superior lien by statute or claim in equity over the bondholders, unless the fund can be diverted from the bondholders by means of the allowance for betterments. The fifth, seventh, and eleventh assignments of error especially raise this question, in which the appellants in effect insist (1) that no allowance can be made for betterments under the pleadings in this case; (2) that there is no sufficient evidence to justify making the allowance; and (3) that the items for which allowance is sought to be made on this account could not be paid out of the corpus of the property to the prejudice of the bondholders, as the so-called betterments were but improvements upon and additions to the property, and inured to the benefit of the security of the mortgage.

After a careful review of the entire case, we are forced to the conclusion that the assignments of error are well taken. The pleadings do not specifically present any issue respecting the betterments upon the property, and the evidence, in any event, to our mind, is clearly insufficient to justify making the allowance on this account. The expenditures for betterments were made by the receiver before the trustees under the mortgage, or the bondholders, were before the court, and during the period of the receivership when the property was thus operated at a great loss, and the bondholders, in addition, ought not to lose a large portion of the corpus of their property as a result, unless required so to do by the plainest principles of equity. Indeed, it may be doubted whether under the law they could thus be deprived of their rights, however equitable it might seem to impose this burden upon the fund. The case of Atlantic Trust Co. v. Dana, 128 Fed. 209, 62 C. C. A. 657 (Circuit Court of Appeals, 8th Circuit), contains an exceedingly interesting discussion of this entire subject, to which, and the cases therein cited, reference is made. There it was sought to appropriate the income arising from the operation of property on which there was a mortgage after the intervention of the mortgagee, in a suit brought by judgment creditors, to the payment of a debt incurred by the receiver in making permanent improvements upon the property before the bondholders had intervened in the creditors' suit in which the receiver was appointed. The court held that the income could not be so applied, nor could the court, through the medium of a receiver, displace or postpone the prior mortgage lien to such application, any more than could the mortgagor, had there been no receiver. What is said as to income thus received, applies more strongly as against the corpus of the property. That case was in many respects like the one at bar. There, as here, the common creditors of a corporation, asked for a receiver, and that receiver, as in this case, before the mortgage creditors or trustee intervened or were brought before the court, contracted debts which that court rejected, and refused to pay out of funds arising from the operation of the property after the bondholders intervened.

It may be seriously doubted whether the items classed as "betterments," for which it is proposed to pay out of the corpus of the property to the exclusion of the bondholders, are other than necessary im-

provements to the property. "As a general rule, all buildings and other improvements put upon mortgaged premises by a mortgagor after the execution of a mortgage become part of the freehold, and as such inure to the benefit of the mortgagee by enhancing the value of his security. Therefore the mortgagor cannot be allowed for such improvements as against the mortgagee in a suit for foreclosure." 16 Am. & Eng. Ency. Law (2d Ed.) 119. Under the laws of North Carolina, improvements and additions to mortgaged property, placed thereon by the mortgagor or his representative, or the mortgagee, inure to the benefit of the mortgage security. Moore v. Vallentine, 77 N. C. 189, 191; Wharton v. Moore, 84 N. C. 479, 480, 37 Am. Rep. 627; Foote v. Gooch, 96 N. C. 265, 270, 1 S. E. 525, 60 Am. Rep. 411; Overman v. Sasser, 107 N. C. 432, 435, 12 S. E. 64, 10 L. R. A. 722. This is especially true in this case, where the mortgage contains an "after-acquired" property clause, which is as follows:

"Now held, owned, used or controlled by the said lumber company, or to which said lumber company may in any wise be entitled, and also all such as may at any time hereafter, be held, owned, used or acquired, and such other like personal property generally of every kind, character or description belonging to or controlled by the said lumber company, and in use or intended and adapted for use on, in or about the premises granted for the business thereof; and also, all the rights, franchises, powers, authorities and privileges which are now or at any time hereafter may be lawfully acquired, exercised or enjoyed in and about the use, management, maintenance, renewal, extension and improvement of the property and appurtenances above granted, and also all other property, real, personal or mixed, now owned by said lumber company, or which hereafter may be acquired by it during the time of the running of this deed of trust or indenture of mortgage."

This language is exceedingly comprehensive, and in plain terms covers property subsequently acquired either in the use, management, maintenance, renewal, extension, or improvement of the property and appurtenances thereto, and should be given full force and effect, unless there is some controlling reason to the contrary arising upon the facts of this case. The displacement of liens upon incumbered property, subject to the court's administration, and the consequent destruction of vested rights, should be sparingly done, and only where the case comes clearly within one of the classes entitling those benefited to priority over persons who have fixed liens on the corpus of the estate. Considering this subject generally, in a case involving railroad property, Mr. Justice Brewer, speaking for the Supreme Court of the United States, in the case of Kneeland v. American Loan Co., 136 U. S. 89, at pages 97, 98, 10 Sup. Ct. 950, at page 953 (34 L. Ed. 379), said:

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the

sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

See, also, Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 263, 20 Sup. Ct. 347, 44 L. Ed. 458.

In the view taken by this court, the claim for betterments should be denied as a whole.

Second. The court having in the previous paragraph of this opinion determined that so much of the decree as set aside a sum on account of betterments from the corpus of the property was erroneous, it becomes unnecessary to pass upon the propriety of that portion of the decree appealed from, so far as it determines the order of priority in which the debts incurred by the receivers in the general creditors' suit should be paid out of the fund arising from betterments, as specially set forth in paragraph B of said decree, and the manner in which the same should be paid will be hereafter considered in determining how the funds arising otherwise than from the property should be distributed.

Third. Considering the claims decreed by the lower court as entitled to priority because of statutory enactment, or by reason of having a priority in equity as against the bondholders, as set forth in paragraph C of the decree appealed from, it will be found that they consist of three classes, aggregating $11,511.80, to wit:

A. (1) American Woodworking Machinery Company, $2,080; (2) Allington & Curtis, $1,194.20; (3) Erie City Iron Works, $662—being respectively for machinery and supplies necessary for and used in the operation and maintenance of the plant, so as to become a part thereof.

B. The debt due W. T. Carter of $618 and interest, for certain live stock sold to the company prior to the receivership, and for the purchase price of which a conditional sales agreement was taken but not recorded, and which properly came to and was regularly used by the receiver in the operation of the plant; and the debt due to Linkhaw & Co., assigned to Busbee & Belvin, for $560, for the purchase price of certain live stock by the defendant company before the receivership, upon which there was a mortgage duly recorded, and which was duly received and used by the receivers in the operation of the plant, and became part thereof.

C. Claims due Edmund & White, assigned to Busbee & Belvin, for $2,957.50, and another due in the same manner to the same parties, for $982.50; and the claim due R. R. Barnes, assigned to Busbee & Belvin, for $2,457.60, are for labor due employés at the time of the receiv-

ership, and for which receiver's certificates were given, as well as for the claims set forth in paragraphs A and B above.

Appellants earnestly insist that the lower court erred in the allowance of all of the claims set forth in these three classes (A, B, and C), and by proper assignment of error present the questions affecting each claim. We will consider them in the order mentioned.

(A) The claims set forth in paragraph A relate entirely to machinery and fixtures purchased by and delivered to the company prior to the receivership, for which conditional sales contracts were taken, providing that the title to the property should remain in the sellers thereof until paid for in full. These contracts were not recorded. Under them, the property was taken over by the company, attached to, used in, and regularly became a part of the plant. Payments were made by the company on account thereof, and the sum due thereon was the amount found owing at the time of the receivership, except, as to the claim of Allington & Curtis, a portion of the work was done after the receivership. The conditional sales agreements never having been recorded, these claims cannot be allowed as against the bondholders secured in the mortgage existing upon the property at the time of the delivery of the goods, and, the same having been used in and become part of the plant of the defendant corporation, became subject to the provisions of the "after acquired" property clause in the mortgage hereinbefore recited. In discussing these questions in Evans v. Kister, 92 Fed. 827, at page 836, 35 C. C. A. 28, at page 37 (Judges Taft and Lurton presiding), it is said:

"* * * If the machinery so purchased and set up has become so affixed as to be part of the principal thing, it will pass under the mortgage, notwithstanding an agreement between the mortgagor and furnisher that the title shall remain in the vendor until payment. * * * Mere registration of an agreement between the mortgagor and vendor, preserving the personal character of the property affixed to the freehold mortgaged, will not prevent the attached property from passing under a previously existing mortgage. To prevent such a result, the mortgagee must be a party to the agreement."

See, also. Railroad Co. v. Cowdrey, 11 Wall. 459, 482, 20 L. Ed. 199; Porter v. Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210; In re Tatem (D. C.) 110 Fed. 519 (a decision of Judge Purnell of North Carolina); Westinghouse, etc., v. Kansas City R. R., 137 Fed. 10, 41, 71 C. C. A. 1. The statute of North Carolina (Revisal 1905, § 983), as follows:

"All conditional sales of personal property in which the title is retained by the bargainor, shall be reduced to writing and registered in the same manner, for the same fees and with the same legal effect as is provided for chattel mortgages, in the county where the purchaser resides, or, in case the purchaser shall reside out of the state, then in the county where the said personal estate or some part thereof is situated; or in case of choses in action, where the donee, bargainee or mortgagee resides,"

—expressly provides for the registration of conditional sales agreements such as is claimed existed in this case, the actual agreements themselves not having been filed because destroyed. And section 1040 of the same Revisal provides specifically for registration, as follows:

"Such chattel mortgage shall be good to all intents and purposes when the same shall be duly registered according to law, but no sale thereunder shall

be made without giving at least twenty days' public notice of the time and place of such sale."

The decisions of the Supreme Court of North Carolina construing these provisions of the statute make it clear that conditional sales agreements of the character in question, and upon property of the kind involved here, are in effect but chattel mortgages, and have to be recorded in the same manner to be effective against persons having the relation to the property conveyed that the appellants had here. Brem & McDowell v. Lockart, 93 N. C. 191; Butts v. Screws, 95 N. C. 215; Foreman v. Drake, 98 N. C. 311, 3 S. E. 842; Horne v. Smith, 105 N. C. 322, 11 S. E. 373, 18 Am. St. Rep. 903; Rodman v. Calloway, 117 N. C. 13, 23 S. E. 37; In re Tatem (D. C.) 110 Fed. 519 (a decision of Judge Purnell, of North Carolina); Westinghouse v. Kansas City R. R. Co., 137 Fed. 40, 41, 71 C. C. A. 1.

Counsel for claimants, however, earnestly insist that as between the parties to the conditional sales agreement, notwithstanding the statute of North Carolina referred to, there is no necessity for recordation of such agreements; that the claims were for unpaid balances due on personal property, the title to which was retained by the vendor, and that the same did not come within the reason of the recordation acts, since they were intended to protect innocent purchasers of property, and not to save harmless buyers who failed to pay for what they bought; and that such property, as against the vendor, would not be subject to the after-acquired property clause of the mortgage, executed and recorded before the property was sold. They cite in support of their contention four decisions of the Supreme Court, namely, United States v. Railroad Co., 12 Wall. 362, 20 L. Ed. 434; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Myer v. Car Co., 102 U. S. 1, 26 L. Ed. 59; and York Manuf'g Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. A careful review of these decisions show that they not only do not support the contention of the claimants, but, on the contrary that the claims cannot be maintained. In the first case, United States v. Railroad, Mr. Justice Bradley, while emphasizing the fact that certain rolling stock of a railroad, consisting of 2 locomotives and 10 cars, acquired by the railroad company on which the purchase price was unpaid, and for which a lien was reserved, held that the after-acquired provisions of a previous mortgage did not apply, notwithstanding the fact that the conditional sales agreement was not recorded; and, speaking for the court, at page 365 of 12 Wall. (20 L. Ed. 434), said:

"Had the property sold by the government been rails, as in the case of Galveston Railroad v. Cowdrey, or any other material which became affixed to and part of the principal thing, the result would have been different; but being loose property, susceptible of separate ownership and separate liens, such liens, if binding upon the railroad company itself, are unaffected by a previous general mortgage given by the company, and paramount thereto."

The two following cases (99 U. S., 25 L. Ed. and 102 U. S., 26 L. Ed., supra) each involved rolling stock and property of railroads, and expressly recognized the same distinction made by Justice Bradley. The case of York Manuf'g Co. v. Cassell, supra, may possibly be susceptible of the interpretation claimed by the vendors here; still, from a careful examination of it, it is quite apparent that it was not the pur-

pose of the court in any way to modify or reverse the doctrine announced in previous cases herein cited, and, moreover, had there been such a suggestion, it would have been obiter on the part of the court, the contest there being between a vendor making claim to a balance due on a conditional sales contract which had not been recorded, as against unsecured creditors; and the court expressly emphasized the fact that it was with that class of creditors it was dealing, and that there was no after-acquired clause in the mortgage then under consideration.

For these reasons, we are of opinion that the three claims referred to in this paragraph cannot be paid out of the fund arising from the sale of the corpus of the property.

(B) As to the two claims referred to under subdivision B as due respectively to W. T. Carter and Linkhaw & Co., for the reasons stated in the last paragraph, Linkhaw & Co. are entitled to a preference over the mortgage bondholders, because of the recordation of their mortgage given to secure unpaid purchase money upon certain of the personal property, purchased and used as part of the plant of the defendant company described by Mr. Justice Bradley in U. S. v. New Orleans R. R. Co, supra, as "loose property, susceptible of separate ownership and separate liens"; and that of W. T. Carter, to the payment of his lien for unpaid purchase money due for the same kind of personal property which formed part of the plant of the company, for which he retained a conditional sales agreement, but did not record the same, because, as between himself and the bondholders claiming under the after-acquired provision of the mortgage, no such recordation was necessary as to such property.

(C) Considering the claims above set forth in this subdivision, they consist of three items aggregating $6,407.50, and are for obligations incurred by the defendant company, prior to the receivership, to laborers, on account of which claims the amounts thereof were advanced to the laborers by the assignors of the present holders of the claims, who hold the assignments by the laborers who did the work, and to whom the company's obligations were given, and for these claims receiver's certificates were likewise issued shortly after the receivership. The holders of these claims insist that, irrespective of their receiver's certificates, they are entitled to be paid the amounts due under the statute of North Carolina hereinafter recited, and that they stand in the place and stead of the laborers who assigned the claims, under the statute in question. Appellees, on the other hand, say that the statute under which they claim has no application, and that in any event the claimants are not entitled to the benefit of such statute because the advancements were to and upon the credit of the company, and not to the laborers themselves. The facts under which these several labor claims were acquired by the holders thereof were substantially these: The Southern Sawmills & Lumber Company executed notes to Edmund & White for $2,957.50 and $982.50, respectively, which were indorsed by Edmund & White to the bank of Lumberton, and upon their indorsement the bank loaned the money to Edmund & White, who, with said money, paid the pay rolls of the company covering wages due laborers for the months of August and September,

1902, which said pay rolls carried assignments from the laborers to Edmund & White, of which the Southern Sawmills & Lumber Company had full notice. Edmund & White did not deal directly with the laborers, but Mr. Morrow, superintendent of the Southern Sawmills & Lumber Company, obtained the pay rolls and assignments and paid the wages to the laborers, as agent for Edmund & White, and Edmund & White were paid a commission by the Southern Sawmills & Lumber Company, for obtaining the money. And as to the certificate issued to R. R. Barnes for $2,467.50, the facts are as follows: On October 20, 1902, the Southern Sawmills & Lumber Company, being in need of funds with which to pay its laborers, applied to R. R. Barnes, who furnished the same to the laborers, and took assignments from them for their wages, together with the written consent to said transaction of the sawmills company. In this case, officers of the sawmills company acted for Barnes in procuring the assignments from the laborers.

The Supreme Court of the United States, in the case of Shropshire, Woodliff & Co. v. Bush, 204 U. S. 186, 27 Sup. Ct. 178, 51 L. Ed. 436, settles clearly the right to assign labor claims, and the right to subrogation to the purchaser of the lien of the laborers. As to assignments of similar claims generally, see, also, Union Trust Co. v. Walker, 107 U. S. 596, 2 Sup. Ct. 299, 27 L. Ed. 490; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Northern Pacific R. R. Co. v. Lamont, 69 Fed. 23, 16 C. C. A. 364; and McCoy v. Wood, 70 N. C. 129. It may be assumed as the settled doctrine, unless the claim is for money bona fide advanced to laborers, and upon the faith of their preference, for the amounts due them, as distinguished from a mere advance to the company of money with which to pay laborers, that the purchaser of such labor claims does not become subrogated to the rights of the laborer whose claim is assigned. We think the transaction as shown by the record, fairly considered and construed, entitled the holders of these claims to the benefit of whatever lien or right the laborer possessed, and that the money was advanced on the faith of the preference to which the laborer was supposed to be entitled as distinguished from the credit of the company. This was the view taken by the special master, and concurred in by the Circuit Judge, and we are not inclined to differ from their view, though the two claims assigned to Edmund & White come dangerously near the border line of claims that cannot be given preference to because of the relation of the debtor company to the transaction. We allow the same, however, inasmuch as the money to pay the laborers was actually procured from the bank by Edmund & White, upon their indorsement and by their agent paid to the laborers, who in turn took the assignment in their favor from the laborers, and the money was subsequently repaid to the bank by Edmund & White.

This brings us to the status of the claims themselves as against the bondholders. Appellants maintain that presumably claims of this class could not be paid out of the corpus of the estate, nor would the court have authority to issue receiver's certificates making them so payable out of the corpus of the estate preferentially over the bondholders. Cook on Corporations (5th Ed.) vol. 3, pp. 2459, 2460. But the question

in this case is whether or not these claims are not entitled to priority under the statute of North Carolina providing for payment of debts of this character over the mortgage indebtedness. The statute is contained in section 1255 (now section 1131 of the Revisal of 1905 of the Laws of North Carolina), and is as follows:

"Mortgages of corporations upon their property or earnings, whether in bonds or otherwise, shall not have power to exempt the property or earnings of such corporations from execution for the satisfaction of any judgment obtained in courts of the state against such corporations for labor performed, nor torts committed by such corporation whereby any person is killed or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding."

This statute has been passed upon by the court of last resort of North Carolina, by this court, and recently by a decision of the Supreme Court of the United States, on appeal from this court. Guardian Trust Co. v. Fisher, 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367; Boston Safety Deposit & Trust Co. v. Hudson, 68 Fed. 758, 15 C. C. A. 651; Hampton v. N. & W. R. R. Co., 127 Fed. 662, 62 C. C. A. 388; Bank v. Manufacturing Co., 96 N. C. 299, 3 S. E. 363; Railroad Co. v. Burnett, 123 N. C. 210, 215, 216, 31 S. E. 602.

The case of Guardian Trust Co. v. Fisher, 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367, was that of a judgment, not for labor under the statute, but for a tort committed for failure to furnish water by the Greensboro Water Supply Company, pursuant to the terms of its undertaking with the city of Greensboro, to extinguish a fire in said city. The contention was made that, since the tort was committed by a water company that acquired the property of the Greensboro Water Supply Company subject to a pre-existing mortgage indebtedness, at least a judgment for a tort under the section in question ought not to take precedence over the bonds secured in the mortgage given by the first company on the property. The Supreme Court said (pages 69, 70 of 200 U. S., page 189 of 26 Sup. Ct. [50 L. Ed. 367]):

"With reference to the contention that only the interest in the property acquired by the second water company was responsible for the damages caused by its negligence—a contention which, if sustained, would result in giving priority to the $50,000 mortgage—the argument is that by the statute 'mortgages of incorporate companies * * * shall not have power to exempt the property and earnings of such incorporations * * * for torts committed by such incorporation'; that the torts were committed by the second water company; that its purchase was of the property of the first company, subject to the $50,000 mortgage, and therefore over that property thus incumbered, and that only, were the judgments given priority. There is, doubtless, force in this contention. But this is not a penal statute, to be construed strictly, but remedial in its nature, and to be construed liberally, to carry into effect the intention of the Legislature and provide the adequate remedy which it intended. The obvious purpose was to make the corporate property situate in the state security against torts committed by its owner, and it would materially impair, if not wholly destroy, the statute, and thus set at naught that purpose, if the corporation constructing the plant could place a mortgage thereon for its entire value, and then by sale to a new corporation enable the purchaser to use that property discharged of all substantial responsibility. In reference to a kindred question arising under the same statute, the Supreme Court of North Carolina said in Railroad Company v. Burnett, 123 N. C. 210, 214, 31 S. E. 603, that under such construction 'this statute would be a false light held out to such claimants to induce them

to furnish material and labor—thinking they had security, when in fact they had none.' It is more reasonable to hold that the statute imposes upon the investment made by a corporate company in its plant a responsibility for torts committed by it or any subsequent corporate owner, and that that responsibility cannot be avoided by any mortgage or other incumbrance voluntarily placed upon the property. Security to the individual citizen is to go hand in hand with the franchise and privilege granted by the state."

What is said by the Supreme Court as to the liberal construction which should be placed upon this statute, in favor of persons holding judgments for torts, applies with equal force to claims on behalf of laborers claiming thereunder.

It is earnestly insisted in behalf of the appellants that, because no formal judgment has been rendered for payment of these claims, this statute has no application, and that the laborers can only be paid, if anything, for such sums as may be due them for labor not exceeding a period of two months next preceding the time of the receivership, as provided in section 1206 of the Revisal of 1905. We do not concur in this view of the law. This latter section, giving to laborers of insolvent corporations a specific lien upon the assets of the company for two months' wages, at least was not intended to militate against rights that they might otherwise have under existing law for debts due them. This section gives a special lien for certain wages. The other section (1131) gives them a right of priority as to debts for labor generally, and as against which the prior and subsequent mortgages of the corporation are void. Railroad Co. v. Burnett, 123 N. C. 210, 216, 31 S. E. 602. Manifestly the two statutes should each be given effect where it can be done, rather than to declare inoperative one of them. Boston Safe Deposit Co. v. Hudson, 68 Fed. 760, 15 C. C. A. 651. The statute (section 1131) is exceedingly comprehensive in its terms, and was intended manifestly to prevent corporations within the state of North Carolina, and those doing business with them, from avoiding the payment of obligations due to laborers. The language of the statute is peculiar, "shall not have power to exempt the property or earnings of such corporation from execution for the satisfaction of any judgment obtained in the courts of the state against such corporation, for labor performed, nor torts committed by such corporation" etc., which language, as construed by this court, and the Supreme Court of North Carolina, in the last-cited cases, makes, as to the particular indebtedness, the mortgage void altogether. The contention made, that in an administration suit of the affairs of a corporation it would be necessary to actually procure a judgment for the labor claim, would be an extremely narrow, instead of a liberal, interpretation of this statute (Foster's Fed. Prac. 243; Thomas v. Railroad [C. C.] 91 Fed. 202), and, in any event, it would hardly seem to avail to defeat altogether the payment of a just claim due for labor, for the reason that with such claim, the fund in hand, and the amount undisputed, if the only objection to its payment was that it had not been reduced to judgment, the court would at least withhold the distribution of that part of the fund until an opportunity was afforded to obtain the judgment; and it can hardly be doubted that the decree of a court of equity in such a suit, adjudging the amount of the claim, and that it was due for labor,

would to all intents and purposes be such a judgment as would meet the requirements of the statute, according to its true intent, meaning, and spirit. These claims were confessedly of the class entitled to be paid under the statute for labor performed, and were seasonably presented by persons entitled to present them and claim the benefit of the statute; and the court passed upon the character and amount of the claims, and by its decree awarded certificates to pay for them. The fact that    ceiver's certificates, technically, should not have been issued upon the then state of the pleadings does not affect the decree of the court in determining the character and amount of these claims, and as such entitles them to payment under the peculiar statute with which we are dealing, out of the corpus of the property, prior to the bondholders.

The two previous decisions of this court cited by appellant of Boston Safety Deposit Co. v. Hudson, and Hampton v. N. & W. R. R. Co., supra, will be found to contain nothing inconsistent with the views herein expressed, and on the contrary, when critically analyzed, will strongly support the same.

(D) Kingsdale Store Company Claim. The appellant's sixth assignment of error relates to the action of the lower court in overruling their exception to the allowance by the master of the claim of the Kingsdale Store Company for $1,753.71, as a preference over the bondholders. This demand was for certain labor checks issued by the receivers, cashed by the Kingsdale Store Company, during the progress of the receivership, and prior to either the trustee or the bondholders becoming parties to the litigation. The special master, while of opinion that primarily it was not entitled to be paid before the bondholders, reported in favor of priority, because of an alleged agreement to that end by counsel for the bondholders. To this action the bondholders, by counsel, excepted, and the lower court, while not specifically allowing the amount, and including it in those to be paid ahead of the bondholders, as set forth in paragraph C of the decree appealed from, overruled the exception taken to its allowance, which in effect placed it in the class of those given preference. This action on the part of the master seems to have resulted rather from an error of fact than of law. A careful review of all that occurred before him satisfies us that it was not the purpose and intent of counsel for the bondholders to make any concession whereby the claim, confessedly not entitled to priority, should be given this favored position. Protest was made by the senior counsel for the bondholders against this view as soon as it was advanced, and we think should have been accepted by the master, even assuming that such admission was ever made. The master in his report cites several authorities (Stowe v. United States, 19 Wall. 13, 22 L. Ed. 144, Putnam v. Day, 22 Wall. 60, 22 L. Ed. 764, and Oscanyon v. Arms Co., 103 U. S. 261, 26 L. Ed. 539) to support the view taken by him, but we fail to find, upon an examination of them, in so far as they relate to this subject, anything that would justify his conclusions.

Fourth. This brings us to the consideration of the question of the distribution of the fund under the control of the court. The sum arising from the sale of the corpus of the property, after payment of any proper charges on account of costs, as contemplated by the decree appealed from, should be applied, first, to the payment of the claims set

forth in paragraphs B and C of subdivision 3 of this opinion, and the residue to the holders of coupons and bondholders, as provided in sections 3 and 4 of paragraph 8 of the decree under review; and the $8,-000 arising from the bond of Receiver Edwards, after payment of costs as contemplated by the same decree, should be applied to the receiver's certificates and receiver's debts specifically referred to in subsection B of paragraph 5 of the decree appealed from, and subsections 1 and 2 of paragraph 9 of said decree, as in said sections provided.

The decree of the lower court will be modified in accordance with the views herein expressed, and, as so modified, affirmed, with costs to the appellants; and this cause is remanded to the lower court to be proceeded with therein as herein directed.

Affirmed, as modified.