155 So. 252

COYLE v. GULF PUBLIC SERVICE CO.,
and three other cases.

No. 32338.

April 23, 1934.

Rehearing Denied May 21, 1934.

Julius T. Long, of Shreveport, for appellants.

Paul Kramer, of Franklin, and Herold, Cousin & Herold, of Shreveport, for appellee.

O'NIELL, Chief Justice.

The plaintiff in each of these four suits has appealed from a judgment rejecting his demand for damages for the destruction of his property by fire. The fire destroyed many houses covering a block and a half in the village of Cotton Valley. The defendant, Gulf Public Service Company, owned and operated the electric light plant in the village, and the waterworks system, such as it was, at the time of the fire.

The plaintiffs seek to hold the public service company liable because there was not enough water in the fire hydrants to extinguish the fire. The suit is not founded upon a contract between the municipality and the defendant, to furnish water for extinguishing fires. On the contrary, the plaintiffs concede that there was no such contract between the municipality and the defendant. It is conceded also that, under the doctrine of the case of Allen & Currey Manufacturing Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471, the plaintiffs or other inhabitants of the village would not have a right of action for damages for a breach of the contract if there had been such a contract between the municipality and the public service company.

The plaintiffs contend that there was a contract on the part of the public service company to furnish them "a sufficient amount of water for all of their needs," and hence that

there was at least an implied obligation on the part of the public service company to furnish enough water to extinguish a fire whenever or if ever there would be need for water to extinguish a fire. The plaintiffs rest their right of action upon the alleged breach of the alleged contract with them, as subscribers for water service; and they claim also a right of action for tort, because of the defendant's failure to have enough water in the hydrants to extinguish the fire, and because the defendant cut off the supply of water completely while the fire was raging, in order to disconnect the electric light wires, for the safety of the men who were putting out the fire.

■ The evidence does not support the allegation that the defendant was under contract, either express or implied, to furnish water to the inhabitants of the village for the purpose of extinguishing fires, or to reduce the fire hazard. The waterworks system was installed by one H. R. Hayes in or before the year 1926. Eight of the business men in the village paid Hayes $10 each for eight fire hydrants, which were distributed about the village. Hayes sold the outfit to the firm of Tooke & Reynolds, who continued the business of distributing water to the inhabitants of the village, in connection with the business of distributing electricity and ice, in the name of the Valley Ice & Power Company. The company sold the plant to the defendant, Gulf Public Service Company. The Valley Ice and Power Company had no franchise for furnishing water to the inhabitants of the village, and no contract to furnish water for extinguishing fires. Hayes had had no franchise for furnishing water to the inhabitants of the village, and no contract to furnish water for extinguishing fires. The municipal authorities were anxious for the Gulf Public Service Company to take out a franchise to furnish water to the inhabitants of the village, and to furnish water for the purpose of extinguishing fires, in order to reduce the fire hazard; but the public service company refused to incur such an obligation, because the waterworks system was inadequate, and the prospect for revenues from water service did not justify incurring the expense of installing a system sufficient to give adequate protection against fire hazard. Meanwhile the public service company desired a new franchise to furnish electric lights and power to the inhabitants of the village, because of a reduction of rates; and, in the negotiations that were had between the company and the mayor and aldermen of the village, the mayor and aldermen sought to induce the company to take out a water franchise, and to agree to furnish water for fire protection, in consideration for the granting of a new electric light and power franchise; but the public service company would not agree to do anything more, with regard to furnishing water to the village or its inhabitants, than to render such service as its predecessor had rendered. The mayor and board of aldermen then requested the public service company to make a written statement of its intention with regard to furnishing water to the village and its inhabitants; and, in response to the request, on the 10th of May, 1929, the general manager for the public service company gave the written statement, addressed to the mayor and board of aldermen of the village, thus:

"Gulf Public Service Company
"New Iberia, La. .
"May 10, 1929.
"To the Mayor and Board of Aldermen, Village of Cotton Valley, Louisiana.

"Gentlemen: Referring to your verbal request that the Gulf Public Service Company outline its position relative to the waterworks system which it is now operating in your village, this is to advise that this company will continue to maintain and operate its present water system and furnish service to the residents of your village as long as, in its judgment, conditions warrant so doing, and that it will improve and extend this service from time to time, as the revenues derived therefrom justify so doing.

"Respectfully yours,
"Gulf Public Service Company,
"By C. S. Makeig, General Manager."

The plaintiffs allege that it was upon their faith in that public declaration, on the part of the Gulf Public Service Company, that they, the plaintiffs, along with the other inhabitants of the village, subscribed for and paid for and received water service from month to month; and that the Gulf Public Service Company thereby gave the assurance and assumed the obligation "that it would provide and furnish all of the residents and business houses water service and sufficient water for all of their needs." And it is argued that one of the needs for which the public service company was obliged to furnish water was the need which arose on the occasion of the fire, to save the property of the plaintiffs.

The reason why the defendant is said to be liable for damages ex delicto is twofold, viz.:

First, that the defendant, having undertaken to maintain a sufficient pressure of water in the fire hydrants, was guilty of negligence in failing to have a sufficient pressure of water there when the fire broke out; and, second, that it was negligence for the defendant's equipment to be so defective or inconvenient that, in order to cut off the electric light wires during the fire, it was necessary for the foreman of the plant to go half a mile from the power house and to open a switch at the high-power line, and to leave the switch open and the water pump stopped for a period of 20 or 30 minutes, while the electric light wires were being severed at the scene of the fire.

The claim for damages ex contractu and the claim for damages ex delicto, in these cases, are so closely related and so dependent upon each other that they must be considered together. The attorney for the plaintiffs cites, as supporting both causes of action, Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536, and Guardian Trust & Deposit Co. and Guarantee Trust & Deposit Co. v. Fisher, 200 U. S. 57, 26 S. Ct. 186, 50 L. Ed. 367.

In the Paducah Case the neglect of the water supply company to have enough water in the fire hydrants to extinguish a fire, which, in consequence of the neglect, destroyed the lumber company's property, was a violation of a very specific contract between the water supply company and the city, in which contract it was declared to be made for the benefit of the inhabitants, and "for the protection of private property against destruction by fire." Even so, the ruling in that case was referred to with disapproval by this court in

Allen & Currey Manufacturing Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471, and is listed there among the small minority of cases decided that way, beside the lineup of a vast majority of decisions to the contrary.

In the Guardian Trust & Deposit Company and Guarantee Trust & Deposit Company Case the only question that was decided, or that the court was called upon to decide, was whether a judgment for damages, rendered against a waterworks company in a case like this (Fisher v. Greensboro Water Supply Co., 128 N. C. 375, 38 S. E. 912), was for tort or for breach of contract, and the ruling was that by the terms of the judgment itself it was a judgment for tort. What was said in that case by Mr. Justice Brewer, for the court, as to the liability of the waterworks company for damages, was said merely by way of explanation that the state court had held that the liability arose ex delicto and not ex contractu; and the dictum on the subject was rejected as authority in German Alliance Insurance Co. v. Home Water Supply Co., 226 U. S. 220, 33 S. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000, being the first case in which the Supreme Court of the United States had an opportunity to express its own opinion on the subject.

▮ The only fact in the cases before us that might distinguish them from the many cases like that of the Allen & Currey Manufacturing Company is that, in the cases before us, the public service company cut off the water supply completely for twenty or thirty minutes while the fire was raging, in order to disconnect the electric wires. The fire broke out

early in the afternoon and attracted a very large crowd. It was necessary, therefore, to cut the electric light wires, to avoid the danger that they might fall upon and electrocute some one. The wires came from a high voltage line that passed through the neighborhood about half a mile from the defendant's plant in Cotton Valley. And, as we understand, the local wires could not be handled safely without being disconnected from the high-voltage line; which could be done only by opening a switch high up on a pole of the high voltage line, near the transformer. It is pointed out by the attorney for the plaintiffs that a more convenient apparatus for disconnecting the local line from the high power line was installed after the fire; hence it is argued that that of itself is evidence of previous negligence in that respect. Profiting by experience, by correcting a mistake, when an accident has brought it to light, is not always an acknowledgment of previous fault or negligence, although sometimes it is considered as evidence of such fault or negligence. It is not evidence of such fault or negligence, in this case, as to render the public service company liable in damages; because it is not at all certain that the destruction by fire would have been less if the electric light wires could have been disconnected without stopping the water pump. In fact the evidence shows that so many of the inhabitants of the village had their hydrants opened that there was not enough water pressure in the fire hydrants or in any of the service hydrants to throw a stream upon the fire, at the time when the foreman for the public service company decided to cut down the electric light wires, and, in order to do so, to cut out the electric cur-

rent, and thereby stop the water pump, for the few minutes necessary to sever the electric light wires. It is very doubtful, therefore, whether any harm at all was done by the stopping of the pump, for the short time that it took the foreman and his helper to travel the half-mile distance from the high power line to the scene of the fire, and to sever the electric light wires, and return to the high power line and close the switch.

Our conclusion is that the district judge was right in rejecting the plaintiffs' demands.

The judgments appealed from are affirmed.

ST. PAUL, J., absent.