**McGUIRE v. DALTON CO., Inc., et al.**

**No. 2011.**

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Mr. McGuire's wife was dead and his daughter, plaintiff herein, who was about 23 years old at the time, occupied, to all intents and purposes, the position of house-keeper in her father's home. The family consisted of Mr. McGuire, his daughter, the plaintiff, and a young son named Albert.

Under the agreement covering the sale, The Dalton Company, Inc., obligated itself to install the range in Mr. McGuire's home, connect it with the gas distribution system in the City of Baton Rouge, make all necessary adjustments and in fact deliver it ready for use. Although it had assumed this obliga-tion, The Dalton Company did not actually make the installation of the range itself, but had contracted for all work of this na-ture with The Baton Rouge Electric Com-pany (now The Gulf States Utilities Com-pany) and this latter company actually in-stalled and connected the range in Mr. Mc-Guire's home under their agreement on September 29, 1936.

On Sunday, October 18, 1936, nineteen days thereafter, while Miss Alder McGuire was preparing dinner for the household, she attempted to light one of the burners on the top of the range and while doing so an explosion took place in the range, caus-ing her to be thrown to the floor. The flame from the explosion caused serious burns about her face, neck and arms. She has instituted this suit to recover damages for her injuries from both The Dalton Company, Inc., and The Baton Rouge Elec-tric Company, in solido, in the sum of $25,-434.01. She itemizes her damages as fol-lows: Physical injuries $10,000; physical pain and suffering $5,000; mental anguish $5,000; permanent disability as a result of her injuries, $5,000. The remainder of the amount sued for, that is, $434.01, she claims, represents bills incurred by her for doctors, hospital, drugs and nursing atten-tion and treatment.

In her petition the plaintiff gives a rather minute description of the gas range and of the manner in which she was attempting to light and operate it on the morning of the explosion. In effect, it is alleged that the range is equipped with four top burners, two on the right hand side of the person facing it and two on the left. Each burner is con-trolled by a separate valve and the valves are so arranged that all a person need do in lighting a particular burner is to turn the valve connected with it, thus admitting gas to the burner through the pipe leading from the valve and then the burner is automati-

Albritton & Ware and Taylor, Porter & Brooks, all of Baton Rouge, for appellants.

Fred G. Benton, of Baton Rouge, for ap-pellee.

Le BLANC, Judge.

On September, 23, 1936, A. T. McGuire, father of the plaintiff in this suit, Miss Al-der McGuire, purchased under a written contract of sale, from The Dalton Company, Inc., a gas range manufactured by the Tap-pan Stove Company of Mansfield, Ohio, and sold under the trade name "Tappan".

cally lit by ignition from a pilot light which is constantly burning on the range. Each burner is controlled with a shutter, the purpose of this shutter when properly installed and adjusted being to permit a proper mixture of air with the gas entering the pipe so as to bring the gas to the right degree of combustibility. Plaintiff alleges that on the date she was injured she was preparing the noonday meal and attempted to light the right front burner by turning the valve controlling the same which was the proper step for her to take, but the said burner failed to ignite. She thereupon turned the valve controlling the right rear burner which ignited in a normal manner. After this she again attempted to light the right front burner by turning the valve strictly in accordance with the instructions which she says she had received by those who had installed and adjusted the stove, and without warning, a terrific explosion occurred in a chamber immediately beneath these two burners with the results as already herein stated.

It is alleged on information and belief that the cause of the explosion was a defective adjustment, as following the same it was ascertained on inspection that the shutter which controlled the right front burner was closed, thus preventing a proper mixture of air with the gas before it reached the burner and the pilot light, lessening its combustibility to such a degree as to prevent ignition, and that on the several times plaintiff sought to light the front burner by turning the valve the gas escaped into the chamber beneath the burner, accumulating in that chamber where with a proper mixture of air it became ignited by the flame from the rear burner which was burning at the time, thus causing the explosion. She charges negligence on the part of The Baton Rouge Electric Company in its failure to have properly adjusted the shutter controlling the right front burner and that such negligence is the sole proximate cause thereof and therefore the cause also of her resulting injuries. She alleges further that The Dalton Company, Inc., is likewise responsible for the acts of gross negligence committed and her resulting injuries as under the contract for the purchase of the gas range that company had obligated itself to see that the stove was properly installed, inspected and adjusted, technical matters as to which she and her father have no knowledge whatsoever.

In the alternative the plaintiff sets out that whether the explosion was due to the causes just stated, in any event, there were no latent structural defects in the stove and that the explosion therefore was due either to defective installation or adjustment, or to patent structural defects, or to two or more of said causes concurring, and that aside from the facts as already alleged by her, she has no knowledge or means of knowledge as to the causes or combination of causes of said explosion but as the inspection, installation and adjustment of the stove was under the exclusive control of the defendants, under the doctrine of res ipsa loquitur recognized under the law of this State, the said explosion was due solely and entirely to the fault and negligence of the said defendants, that being so even though the allegations already made do not fully explain just how the explosion occurred.

In several articles of her petition plaintiff describes her injuries, the more serious of which consisted of burns on her face, involving both her eyes and on her neck and arms. She alleges further that her said injuries have caused her to suffer serious and permanent cosmetic defects and more particularly the injury to her eyes will cause her to wear glasses, which in itself is a defect that detracts noticeably from her physical appearance and personality.

Each of the defendants filed an exception of no right or cause of action, both of which were duly overruled. They each then filed a separate answer.

The Baton Rouge Electric Company in its answer denies most of the material allegations of the plaintiff's petition for lack of sufficient information. It admits that under the contract it had with The Dalton Company, Inc., it installed, connected and adjusted the gas range sold by that company to Mr. A. T. McGuire in his home on September 29, 1936, alleging particularly that the work was done properly and in accordance with well established standards and practices, and that when it was completed, the range and its shutters, valves and other apparatus, devices and equipment were functioning perfectly. It denies that the accident was caused by any negligence on its part or of its agents, servants or employees. Further answering, this respondent avers that there is no privity of contract whatsoever between itself and the plaintiff or her father and that it was under no duty or obligation to either of them. Again denying any negligence and that the range had not been properly installed and adjust-

ed, this defendant sets out, on information and belief, that both of the burners alleged to have been involved in the explosion were used by plaintiff and her father for cooking all of the family meals from September 29, 1936, to October 18, 1936, during all of which time the gas range with all of its attachments worked and functioned perfectly. It avers further that if the same was not properly adjusted and in good condition at the time of the explosion on October 18, 1936, this was due to no fault or negligence on its part or on the part of its agents or servants but was due to some cause not known to it or its agents or employees which intervened and took place after its said servants and employees had completed and finished their work and for which it is in no way to blame. In the alternative this respondent pleads contributory negligence against the plaintiff in the following particulars: (a) That at the time of the alleged accident she was in a stooped or bent over position with her face very close to the burners, which was gross negligence. (b) That she knowingly permitted too much gas to be discharged from the front burner and then caused a flame to come in contact with this excessive accumulation of gas, which likewise was gross negligence. (c) That although unfamiliar with gas ranges and the manner of their operation she persistently experimented with the burners of the range, tinkering with them after she had been unable to light them, and (d) that she failed and neglected to call respondent or to request an experienced man to come inspect the range after she knew that the burners were not lighting.

The defendant Dalton Company, Inc., in its answer, admits the sale of the range as alleged in the plaintiff's petition but avers that it is not a manufacturer of gas stoves and that this particular range which was purchased by it from the manufacturer was kept in the crate in which it was shipped by the manufacturer until the date it was installed in the McGuire residence. It sets out the agreement which it had with The Baton Rouge Electric Company to install gas ranges and that under said agreement that company agreed to and did install and adjust the gas range involved in this explosion. This defendant, in the same manner as did The Baton Rouge Electric Company, sets out the fact that the range was used in plaintiff's residence from the date it was installed to the date of the alleged explosion without any trouble or difficulties in operating. It denies that it had any knowledge, construc-

tive or otherwise, of any defects in the said range, if there were any, and finally pleads contributory negligence against the plaintiff in the same particulars as embodied in the same plea filed by The Baton Rouge Electric Company.

After trial in the district court on the issues as thus presented, there was judgment in favor of the plaintiff against both defendants, in solido, in the sum of $4,421.70. They both have appealed.

In this court, the point involved in the exceptions of no right or cause of action and again pleaded in defense on the merits, is seriously urged again by the defendants. The point, as stated, relates to the lack of privity existing between the plaintiff and the defendants in the transactions pertaining to the purchase and installation of the stove, in consequence of which, it is contended, she is unable to maintain her suit.

The Dalton Company, Inc., concede that probably A. T. McGuire might have had a cause of action but insists that Miss McGuire is a total stranger to the transaction covering the sale of the stove and can have no rights arising from or growing out of that transaction. The Baton Rouge Electric Company strenuously contends that with regard to it both Mr. McGuire and his daughter, the plaintiff, are lacking in privity of contract between them. This defendant urges further that under its agreement with The Dalton Company covering the installation of gas appliances, it was an independent contractor and that under the facts presented it cannot be held responsible for the damages claimed by the plaintiff, for, as stated in 14 Ruling Case Law, page 107, par. 42, "The general rule is well established that an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him, though the injury result from the contractor's failure to properly carry out his contract."

In brief of counsel for this defendant it is stated in effect that if there is any principle of law well settled, it is that a person who performs work or labor under a contract owes no duty to anyone not in privity of contract with him, from which it follows that an independent contractor is not liable for injuries to a third person arising after the completion of the work. In support of this proposition they cite Schott et al. v. Ingargolia et al., La.App.,

180 So. 462; Allen & Currey Manufacturing Company, Ltd., v. Shreveport Waterworks Company, 113 La. 1091, 37 So. 980, 68 L.R.A. 650, 104 Am.St.Rep. 525, 2 Ann. Cas. 471; Coyle v. Gulf Public Service Company, 179 La. 867, 869, 155 So. 252, and several cases from other jurisdictions.

The legal relationship flowing from the agreement between the two defendants does not impress us as being of any great or serious importance insofar as the claim of the plaintiff is concerned. She is not concerned beyond the fact that some contractual relationship existed between them regarding the installation of the gas range which her father purchased under an agreement that it was to be installed in his home, and that she was injured because of an alleged defective installation of that gas range. The important question as relates to her is her status in regard to the purchase of this gas range and its contemplated use in the household of her father. Was she simply a *third person,* a stranger in the transaction involving its purchase and its use, or was she, in contemplation of law, in view of her position in the household, a party at interest and therefore in privity of the contract under which the range was purchased and installed?

We have emphasized the words third person because it is readily noted that the object of the rule announced in the quoted citation from Ruling Case Law is to relieve the contractor from liability to a *third person,* for injuries arising out of failure to have properly performed the work contracted for and occurring after that work has been completed.

In Allen & Currey Manufacturing Company, Ltd., v. Shreveport Waterworks Company, a claim for damages was presented against the defendant, a private corporation holding the water works franchise of the City of Shreveport arising out of the loss of property by fire because of the alleged failure and neglect of the defendant to keep its hydrants in good order. The defense of lack of privity of the plaintiff to the contract between the City and its franchise holder was urged, but the decision which rejected the plaintiff's demand seems to rest on the broader ground that no liability for damages lies against a city in favor of its inhabitants for neglect in the performance of its duty to furnish water to its own fire department in protecting property within its corporate limits and hence no duty rests upon it to impose such liability on a

contractor who engages with it to perform such duty. The case of Coyle v. Gulf Public Service Company was one of four companion cases in which, as far as the law was concerned, the same principle as laid down in Allen & Currey Manufacturing Co., Inc., v. Shreveport Waterworks Co. was involved, and it seems apparent to us that none of these cases are in apposition to the question with which we are concerned in this case.

In Schott et al. v. Ingargolia et al. so strongly relied on by defendants, the claim for damages was presented against a defendant contractor by a guest in the home of the owner of a building which the contractor had repaired or reconstructed some three years before. Naturally the rule as announced in 14 Ruling Case Law, supra, was followed, for obviously the guest had to be considered a third person with no privity of contract whatever, or other relation as we can see, with the contract.

In every citation from other jurisdictions found in counsel's brief, it is observed that the claimants for damages are referred to as strangers or third persons and therefore they were parties without privity either by contract, or otherwise, with the defendants who are alleged to be responsible to them for the injuries they had sustained.

In the case before us, in view of the status of the plaintiff as housekeeper, the one who occupied to all intents and purposes the position of the wife in directing and managing the household, she certainly could not be said to be a stranger and could hardly be called a third person in relation to the transaction involving the purchase and installation of this necessary household appliance, a cooking stove. Normally, the husband and father has very little, if anything, to do with the actual cooking in the home. His part is generally confined to providing the necessary equipment with which to do the cooking. The actual use of a cooking range is customarily in the hands of the housekeeper and that it was so contemplated in this case is indicated by the fact that at the time this range was installed plaintiff as well as her father was told by those who had installed it that all proper adjustments had been made and she was duly instructed how to use it properly.

Because of plaintiff's position in the household for which the range was pur-

chased, we have concluded, as did the district judge, that she was a party at interest and in privity of the contract covering its sale and installation. As such of course she has a right and a cause of action.

■ As the sale of the range by The Dalton Company, Inc., duly installed in her father's home, and its actual installation under the agreement with The Baton Rouge Electric Company were admitted, it became incumbent on her to prove on the trial of the case on the merits, on her main demand, that the explosion alleged by her in her petition had occurred and that it resulted from defective installation of the range and more especially from a maladjustment of the shutter through which air was admitted to the burners in order to bring the gas to a proper degree of combustion.

■ The two employees of The Baton Rouge Electric Company who went to the McGuire home to make the installation of the range were R. E. Lovett and B. F. Humphries. The actual installation and adjustment of the stove was made by Mr. Lovett but Mr. Humphries assisted in making the necessary tests for leaks and in igniting the burners. They are both men of experience and went about their work in this instance in the usual and ordinary way in which that kind of work is done. All proper connections and adjustments were made, no leaks were found and although they met with some little difficulty in adjusting the shutters because of a strong wind blowing through a window near the stove, their testimony nevertheless gives the impression that they left the range in proper working order after having instructed three ladies who were present, one of whom was the plaintiff, how to operate it.

At the time the range was installed, Miss McGuire was working out and she and her father had their principal meal in a restaurant. The stove was used but very little; principally for preparing light breakfast. The testimony is to the effect that for that purpose the two burners on the left hand side being more convenient because that was the side of the stove next to the kitchen sink, those were the two that were almost always used. Even then, however, in some attempts made to use the front burner on the right it was found not to ignite readily or at all. On the day of the accident it became necessary, in cooking the Sunday dinner, to use this burner and Miss McGuire attempted to light it. She had placed a Dutch oven over the burner and then opened the valve to light it. It would not ignite. She says she tried over two or three times without success and after that she decided to light the one to the rear of it. That one ignited at once and she then attempted once more to light the one in front and as she turned the valve to open it, the explosion occurred. After the explosion the door of the range oven and the utility chamber door were found open but Miss McGuire was not positive whether the flame from the explosion came from the burner or from the oven or the utility chamber.

The Baton Rouge Electric Company was notified of the accident and one of its service men, Mr. W. P. Gautreaux, reported to the McGuire home at once. He made a careful inspection of the range and found that the shutter which controlled the front burner on the right was not properly adjusted. He examined all connections and could find no leaks at all. He readjusted the shutter on the right front burner and it appears that since then this burner as well as the others has been working properly.

Because of his careful investigation immediately following the accident, the testimony of Mr. Gautreaux becomes very important in considering the cause of the explosion, and upon reading it it would be difficult indeed to reach any other conclusion than that it was due to an improper adjustment of the shutter which controlled the mixture of air and gas going into the right front burner which Miss McGuire was attempting to light when it occurred. His testimony, in our opinion, definitely fixes the responsibility for the accident on the employees of The Baton Rouge Electric Company who evidently were negligent in adjusting this shutter at the time they installed the range. For their negligence, their employer as well as The Dalton Company, Ltd., under the contractual relations existing between them, must be held liable in damages to the plaintiff unless they have shown that she was in any manner guilty of contributory negligence.

■ The conclusion we have reached on the question of negligence makes it unnecessary for us to consider the alternative plea of the plaintiff under which the rule under the doctrine of res ipsa loquitur was invoked. Neither, should we state at this

time, do we find any merit in the contention of the defendant, The Dalton Company, Ltd., that it should be relieved of liability on the ground that by accepting the service of The Baton Rouge Electric Company, Inc., in installing the stove, Mr. McGuire had permitted a novation of his contract to purchase it installed in his home, to take place. There is nothing in the record to justify the assumption that Mr. McGuire had ever agreed to substitute either the one or the other of the defendants with regard to any obligation either or both might have contracted in installing the range in his home. Neither does it anywhere appear that he ever intended to relieve The Dalton Company, Ltd., of its obligation in any way. These were necessary requirements before novation could take place. Civ.Code, Arts. 2185, 2187, 2189.

Coming now to the plea of contributory negligence urged on behalf of both defendants we can dispose of the first two grounds on which it is based by stating that there is no testimony whatever to the effect that Miss McGuire was in a stooped or bent position over the stove or that she knowingly permitted too much gas to be discharged from the front burner and then caused a flame to come in contact with the gas. The more serious charges are that she tinkered or experimented with the stove, and that she failed and neglected to call on the service departments of the defendants when she first had trouble in trying to light the burner.

We do not think that Miss McGuire's action in trying three or four times to ignite the burner by turning the valve off and on was more than the usual and ordinary course which the average, normal individual would have followed. If she could have caused the burner to be ignited at all that was the procedure for her to follow. Nor do we think that opening the valve three or four times in an effort to light the burner can be said to have been a tinkering or persistent experimenting with the stove. Her failure or that of her father to have sent for a service man before, can hardly be classed as negligence, as the testimony shows that they had used the stove and especially the burner on the right hand side so little before that they really could not have appreciated that there was anything seriously wrong with it. Besides, there is testimony to the effect that Mr. McGuire did complain to the manager of The Dalton Company, Ltd., through whom he had purchased the stove and he was told that very likely the trouble was caused by a lack of pressure in the gas. We agree with the trial judge that defendants have failed to support their plea of contributory negligence against the plaintiff and therefore they must be held liable in damages for the injury which she sustained by reason of the explosion.

We cannot agree with him however with regard to the amount of damages plaintiff is entitled to as we believe that the award made by him is a bit excessive.

Plaintiff no doubt, as she says, suffered considerable pain from the burns on her face and arms because of the injury to her eyes must also have undergone considerable mental distress concerning her eyesight. The burns however, were first and second degree burns and have left no permanent effects or injuries. Within due time she had recovered entirely and was able to resume her work and therefore is in no way permanently disabled. She has an eye condition referred to as photophobia which necessitates the wearing of eye glasses. The specialist who treated her testifies that that condition may have been caused by the burns although he states that it is quite common with people who come to consult him and who have had no burns. Assuming nevertheless that in Miss McGuire's case it was brought about by the burns which she sustained, the only effect or result, as in all cases, is that she will have to wear glasses. For a young lady of her age that may well be considered as an element of damages but within reasonable limits.

We are of the opinion that by lumping all the items of damages for the injuries and pain she suffered, the sum of $2,500 would properly and fairly compensate her. In addition of course she is entitled to recover the actual expenses in the sum of $421.70 as found by the district judge.

For the reasons stated it is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount of the award made from the sum of $4,421.70 to the sum of $2,921.70 and that as thus amended it be affirmed. The defendants-appellees are to pay all costs incurred in the lower court, plaintiff-appellant is to pay the costs of appeal.