JANVIER, Judge.
The question presented is interesting. May a contractor, who, under contract with an owner, installs a kitchen wall cabinet in a dwelling which the owner leases to a tenant, be held liable to a tenant for damage caused by the fall of the cabinet seven months after installation where the fall results from an undiscovered defect in one of the brackets used to support the cabinet.
During the early part of 1951 a general contractor was engaged in constructing for Charles Seeman as owner of a duplex apartment, one of the units of which was to be occupied by the owner and the other of which was to be leased to Wallace M. Davis as a residence. In April, 1951, the present defendant, Charles W. Strecker, whose business is conducted as Orleans Cabinet Works, furnished and installed in the kitchens of both apartments wall cabinets to be used for the storage of glassware, etc.
Mr. and Mrs. Davis moved into the apartment which they leased from Seeman and on November 20, 1951, which was approximately seven months after the cabinets had been installed, one end of one section of the cabinet in their kitchen suddenly sagged a distance of six or eight inches as the result of the breaking of one of the iron angle irons which, on the top of the cabinet, fastened it to the wall. The cabinet did not fall to the sink over which it was installed, one end merely sagging the above mentioned distance. Most of the glassware in the cabinet was broken.
Mr. Davis had secured from Marine Insurance Company insurance protection under what is known as a “floater” policy and the insurer, conceding its liability for the loss, paid to him $248.80, securing from him a written subrogation under which he transferred to the insurer such rights as he might have had against any party at fault.
The insurer then brought this suit against Strecker alleging that the cabinet had fallen as the result of negligence of the defendant “in failing to properly install and secure the wall cabinet, specifically in failing to brace the cabinet from underneath,” and in the alternative alleging “that the doctrine of res ipsa loquitur is applicable to the facts herein alleged."
Plaintiff prayed for judgment against Strecker in the sum of $248.80.
Defendant filed answer in which he admitted that he had furnished and installed the cabinet, averring, however, that the cabinet broke “approximately six (6) months after the installation,” because “one of the braces holding it broke,” and “the failure of the brace could have been due to a hidden defect which the examination of it by defendant before it was used had not shown, or could have been due to overloading of the cabinet from the time of installation to the time the brace broke.” Defendant further alleged that similar “braces” had been used by him for the same purpose for many years, and that they had been bought “from a reliable and reputable manufacturer * * *.”
Shortly after filing answer the defendant filed an exception of no cause of action. The exception was referred to the merits, and after a trial on the merits there was judgment in favor of defendant dismissing plaintiff’s suit, and plaintiff has appealed.
In spite of the contention of defendant that plaintiff has not shown definitely the amount of the loss of Mr. Davis, we think that the evidence amply justifies the conclusion that the loss amounted to at least as much as the insurer paid and that accordingly if plaintiff is entitled to recovery, the amount thereof should be the amount prayed for.
Although there is considerable evidence as to what caused the cabinet to sag at one end, the record leaves no doubt at all that one of the braces or angle irons by which it was fastened to the wall broke into two parts at the bend of the angle and that, as *519 a result, the other angle iron on the other end on the top of the cabinet could not prevent the sagging of the end at which the broken angle iron no longer supported it.
That the sagging resulted from the breaking of the angle iron is shown by all of the evidence on that point.
It is also made very certain that the cabinet was not overloaded and that had the angle iron not been defective it, together with the other one at the other end, could have supported many times the weight of the cabinet and its contents.
We are thus confronted with the question of whether a contractor, who furnishes and installs a cabinet for the owner of an apartment, should be held liable to the tenant for the loss sustained seven months later as a result of the sagging of the cabinet, resulting from the defect in one of the brackets.
There is, we think, no doubt that there is established here and in most jurisdictions a general rule to the effect that a contractor, a manufacturer or a distributor of an article is not liable to parties with whom there is no contractural relationship for damage resulting from defects in the article. We discussed this question in Schott v. Ingargolia, La.App., 180 So. 462, 463, quoting from 14 R.C.L., Independent Contractors, section 42, page 107, as follows:
“ ‘The general rule is well established that an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result from the contractor’s failure to properly carry out his contract.’ ”
We also quoted the following from the Treatise on the Law of Torts by Mr. Cooley, Fourth Edition, Volume 3, section 498:
“ ‘The general rule is that a contractor, manufacturer, vendor, or fur-nisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of such article. * * * In Curtin v. Somerset, (140 Pa. 70, 21 A. 244 [12 L.R.A. 322, 23 Am.St.Rep. 220]) the defendant contracted with a company to erect a hotel. After the work was completed and accepted, the plaintiff, a guest in the hotel, was injured by the fall of a porch, due to inferior construction and a failure of the defendant to comply with the plans and specifications. A recovery was denied and the general rule above stated was applied. “The consequences of holding the opposite doctrine” says the court, “would be far reaching. If a contractor who erects a house, who builds a bridge, or performs any other work; a manufacturer who constructs a boiler, piece of machinery, or a steamship, owes a duty to the whole world, that his work or his machine or his steamship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned.” ’ ”
Concluding that in such circumstances there is ordinarily in the manufacturer or the contractor no liability to a third person, we said:
“The imposition of liability upon a contractor, under the circumstances presented in the instant case, would, of necessity, be premised upon the violation of an extremely remote duty of care and would serve only to foster a faulty tenet of responsibility which could be stretched ad infinitum to proportions ad absurdum. Hence, it is our view that the doctrine approved by the federal and common-law courts is correct.”
*520 Our decision in that case received unfavorable criticism in 1 L.L.R. 233, in a case note, in which the author stated that that rule has come down to us from a realization many years ago of the necessity for the encouragement of industrial development and the fear that the imposition of liability in such cases might discourage the development of industry and that “a paralyzing legal responsibility would fall on infant industry.” The author intimates that there is no longer any necessity for such protection of infant industry. However, it is not made to appear, and we have not discovered, that there has been any substantial departure from the general rule as followed by us in the Schott case. It is true that there have been many recognitions of several exceptions to the general rule. For instance, it is well recognized that the manufacturer or distributor of foods and drinks may be held liable to the ultimate consumer even though there is no actual privity of contract between the manufacturer and the ultimate consumer. This is based on the realization that the manufacturer knows that the article is manufactured for distribution to ultimate consumers, and on the further fact that it is well known that if foreign substances are permitted to enter into food or drink, the ultimate consumer will no doubt sustain damage. See the various cold drink cases too numerous to mention.
It is also recognized that there may be liability when the article which is manufactured for general distribution is inherently dangerous. 57 Am.Dec. 455.
There is a further exception where the article, though not inherently dangerous, may become very dangerous if it is manufactured or contains parts which are defective and which defective parts, such as the steering gear or the brakes of an automobile, may render it very dangerous. See MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, and O’Brien v. American Bridge Co. of New Jersey, 110 Minn. 364, 125 N.W. 1012, 32 L.R.A.,N.S., 980.
The facts here do not justify the conclusion that this case falls within the contemplation of any one of the exceptions to the general rule. Surely it cannot be said that such a cabinet is inherently dangerous. And it seems to us that the only one of the exceptions which can even be given consideration is that under which there may be liability if the manufacturer fails to discover a defect which would have been discovered had he given it the examination which an ordinarily prudent person would have given.
To hold here that the contractor should be liable would require a holding that in such case there should be given to every piece of hardware used in its installation a most careful, possibly a microscopic examination. We do not think that under such circumstances the contractor is required to do more than to purchase material manufactured by a reputable manufacturer and to give to it the cursory examination which is ordinarily given to such hardware. If more is required then a contractor in such case would himself labor under “a paralyzing legal responsibility” which is referred to in the quoted article in 1 Louisiana Law Review.
It is further argued here that there was a relationship between the defendant contractor and the tenant, Davis, which is very close to contractual, since under the circumstances the contractor must have known that the cabinet was being installed for the use of the tenant Davis. As supporting this contention our attention is directed to McGuire v. Dalton Co., Inc., 191 So. 168, 172, in which the Circuit Court of Appeal for the First Circuit held that there was liability in favor of a third person with whom there had been no actual privity of contract. There the gas stove, which was the article which caused the damage, was sold to and installed for the father of the plaintiff who was injured by the explosion of the stove. The Court, in holding that the daughter could not be considered as a third person, said:
“In the case before us, in view of the status of the plaintiff as housekeeper, the one who occupied to all intents and purposes the position of the wife in directing and managing the *521 household, she certainly could not be said to be a stranger and could hardly be called a third person in relation to the transaction involving the purchase and installation of this necessary household appliance, a cooking stove. Normally, the husband and father has very little, if anything, to do with the actual cooking in the home. His part is generally confined to providing the necessary equipment with which to do the cooking. The actual use of a cooking range is customarily in the hands of the housekeeper and that it was so contemplated in this case is indicated by the fact that at the time this range was installed plaintiff as well as her father was told by those who had installed it that all proper adjustments had been made and she was duly instructed how to use it properly.”
It is said that here the contractor must have known that the cabinet was being installed for the use of a tenant because there were two apartments in the building and similar cabinets were being installed in each, and that, furthermore, after the installation of this cabinet the same contractor under contract with Mr. Davis, the tenant, installed other cabinets for Mr. Davis.
We do not think that those facts justify the conclusion that there was anything resembling a quasi contractual relationship between the contractor and Mr. Davis.
Our conclusion is that there is no liability here since there was no contractual relationship between the contractor, defendant, and the tenant, Wallace M. Davis.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.