JANVIER, Judge.
For very detailed statements of the facts shown by this record and comprehensive discussions of the legal principles which are involved reference may be had to our original decision in this same matter, 89 So.2d 517, and to the decision and decree of our Supreme Court which reversed our decree and remanded the matter to the Civil District Court for the Parish of Orleans, 234 La. 522, 100 So.2d 493. We shall, however, sketchily outline again the facts and the legal problems which were and, to some extent, are still before us.
Charles Seeman owned a residence-apartment on Sixth Street, in New Orleans. He entered into a contract to lease the apartment as a residence to Wallace M. Davis. Before the commencement of the lease, Seeman entered into a contract with Charles W. Strecker, a cabinet maker, for the construction and installation by Strecker of certain wall cabinets in the residence. The installation of the cabinets was completed during the month of April 1951. Sometime after the completion of the work, Mr. and Mrs. Davis took possession of the leased premises, and, on November 20th, 1951, which was seven months or more after the cabinets had been installed, one of the cabinets in the kitchen sagged at one end to such an extent that valuable glassware and crockery of Mr. and Mrs. Davis was broken.
Davis had secured from Marine Insurance Company a “personal floater” policy, and the insurance company, being liable under this policy, paid to Davis $248.80 as the value of the broken glassware and crockery, and, having secured from Davis a subrogation, brought this suit against Strecker.
Strecker admitted the construction and installation of the cabinets, but denied that there had been any negligence or fault in the installation, and averred that the fall of the cabinet may have been due to a hidden defect in one of the angle irons which was used to attach the cabinet to the wall, or that it may have been due to overloading of the cabinet. After filing this answer, Strecker filed exceptions of no right or cause of action based on the contention that, since there had been no privity of contract between Davis and Strecker, Davis, as a matter of law could not have maintained an action against Strecker, and that consequently his subrogated insurer could not. This exception was referred to the merits, and, after trial, there was judgment in the Civil District Court for the Parish of Orleans dismissing the suit. When asked for reasons for the judgment of dismissal, the District Judge wrote:
“I have dismissed this suit because I believe I am bound by the ruling in *371 Schott v. Ingargolia, (La.App.1938) 180 So. 462, which reviews and adopts as the Louisiana rule the doctrine approved by the federal and common-law courts. It is true that this ruling has been criticized in 1 Louisiana Law Review 233, but it has never been overruled. Clearly, McGuire v. Dalton Co., Inc., (La.App.1939) 191 So. 168, is distinguishable. The Louisiana rule as announced in Schott v. Ingargolia, supra, appears to be in line with the general rule everywhere. See 14 Ruling Case Law, verbo, Independent Contractors, sec. 42; 123 A.L.R. 1197.”
These reasons may be interpreted only as holding that, in the opinion of the District Judge, there could be no suit by the third party, Davis, against the contractor, Strecker, since there had been no contractual relationship between them.
When the matter came before us on appeal, we, with one Judge dissenting, affirmed the judgment dismissing the suit. Having granted a writ of certiorari, the Supreme Court, with one Justice dissenting, reversed our decree and held that, regardless of the fact that there had been no privity of contract between Davis and Strecker, there was in Davis a right to sue, and consequently his subrogee might do so. On rehearing the Supreme Court, with the same Justice again dissenting, reinstated its original opinion and decree and gave the following reasons for remanding the matter rather than rendering a final decree on the merits:
“It is further suggested that, even conceding the right of plaintiff to sue the contractor, recovery should be denied herein since no negligence was shown on the part of defendant in the installation of the cabinet. Neither the district court nor the Court of Appeal has passed on this issue (as is clearly disclosed by the written reasons for judgment), the dismissal of the suit having been based solely on the sustaining of the defense that plaintiff was without right to maintain an action against the contractor. Consequently, we cannot now determine this case on its merits, and we must remand it to the district court for that purpose.”
The matter was then heard in the Civil District Court and there was judgment in favor of plaintiff as prayed for in the sum of $248.80. Defendant has appealed sus-pensively.
The record contains much evidence on the question of whether the cabinet was properly attached to the wall and on the cause of its sagging at one end. It is shown that when originally installed it had been attached to the wall at one end by a four inch angle iron and at the other end to another cabinet where the two met in the corner of the room. The other cabinet did not fall, nor did that end of the cabinet with which we are concerned. We are convinced, as we were when the matter was first before us, that the principal cause of the fall was the breaking of the angle iron at its bend. We say this because after the fall it was found that one piece of the angle iron remained affixed to the top of the cabinet and the other remained attached to the stud in the wall. None of the screws in either piece of the broken angle iron pulled out. This is most important in view of the opinion expressed by a so-called expert who stated that in his opinion the fall had resulted from the fact that the screws used were too small.
As stated, it is shown that when the original installation was made only one angle iron was used at one end and that 'when Strecker was summoned after the fall, he replaced the cabinet by using two irons, one at the distant end and one a short distance- — apparently about 16 inches —from the other end at which that cabinet was attached to the other cabinet.
We are convinced that had the angle iron not been defective it would have supported several times the weight of the cabinet and its contents. This finding of fact, that the fall was due primarily to a defective piece of hardware used by the contractor, but *372 for another conclusion which we have reached, would pose a very interesting and vexing question which, to some extent, was discussed by the Supreme Court, but was not definitely determined when this matter was before it. That question is, is there liability in a contractor for damage caused by defective material used by the contractor in carrying out a contract provided he used standard material bought from a reputable furnisher of such material and used ordinary care in examining the material to determine whether there existed in it any defect? This is a much disputed question, but we feel that it need not be determined by us for the reason that the record convinces us that, though primarily the cause of the fall was the defective angle iron, that angle iron would probably have been sufficient to hold the cabinet at that end had there been originally installed, as there later was installed, another angle iron some distance from the other end of the cabinet.
It is true that the other end of the cabinet was affixed to the cabinet which joined it at the corner of the room and that that end did not fall. But one of the photographs in evidence shows that after the fall, when the cabinet was replaced, a second angle iron was placed apparently some distance from the other cabinet and this no doubt would have afforded additional support to the cabinet which sagged at the other end and caused the damage.
Though one angle iron at the far end would have been sufficient to support the cabinet if that angle iron had not been defective, it would have been safer to have installed the second angle iron as shown in the photograph by affixing it to the top of the cabinet and to a stud in the wall which was some little distance from that end of the cabinet.
In view of these facts, we feel that the cabinet should have been originally installed with two angle irons instead of the one and that therefore the failure of the contractor to use the second iron was negligence and that without this negligence the accident would not have occurred.
Since the Supreme Court remanded the matter in order that it might be determined whether there was fault on the part of the contractor and since the District Court found that there was fault and since we can find no fault with the finding of the District Court, it becomes necessary to affirm the j udgment.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., respectfully concurs.